UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICHOLAS A. GLADU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   1:22-cv-00134-JDL |
| MATTHEW MAGNUSSON, JAMES | ) |
| HANCOX, RANDALL LIBERTY, and | ) |
| JOHN DOES 1-7, | ) |
| | ) |
| Defendants. | ) |

**ORDER ACCEPTING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

Nicholas A. Gladu, who is incarcerated at the Maine State Prison and proceeding *pro se*, filed a seven-count Amended Complaint on May 27, 2022 (ECF No. 11), against Matthew Magnusson, James Hancox, and Randall Liberty—as individuals and in their official capacities with the Maine Department of Corrections (the "Department")—alleging constitutional injuries actionable under 42 U.S.C.A. § 1983 (West 2024) among other claims. The named Defendants[1] move to dismiss the Amended Complaint for failure to state a claim (ECF No. 54). They contend in part that several of Gladu's claims are barred by the doctrine of *res judicata* in light of an Order granting summary judgment to other Department officials in a prior case, *Gladu v. Waltz*, No. 1:18-cv-00275-GZS (the "prior Action").[2] *See* 2020 WL 6385618

---

[1] Gladu also brings claims against seven unnamed Defendants—all Department officials.

[2] The Defendants in the prior Action were Media Review Officers Gary Waltz and Casey Chadwick and Grievance Review Officer Josh Black—all Department employees.

(D. Me. Oct. 30, 2020) (rec. dec.), *report and recommendation adopted*, 2020 WL 7344706 (D. Me. Dec. 14, 2020), *aff'd*, No. 21-1010, 2022 WL 20437774 (1st Cir. Oct. 24, 2022).

On August 31, 2023, United States Magistrate Judge John C. Nivison filed his Recommended Decision (ECF No. 64), pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2024) and Fed. R. Civ. P. 72(b). The Magistrate Judge recommended granting the Defendants' Motion to Dismiss after concluding, *inter alia*, that Gladu's First Amendment, equal protection, and due process claims are precluded by claims he asserted in the prior Action that "present[ed] the same or sufficiently identical[] causes of action." ECF No. 64 at 5 (quotation marks omitted). Gladu objects to the Recommended Decision's conclusion that *res judicata* bars his claims as "erroneous and clearly unsupported by facts and the Court's own records." ECF No. 79 at 2, ¶ 5. Gladu does not otherwise contest the Recommended Decision's findings or recommendations.

After reviewing *de novo* "those portions of the [Recommended Decision] to which objection [was] made," I do not adopt the Recommended Decision to the extent it advises dismissing Gladu's First Amendment, equal protection, and due process claims under the doctrine of *res judicata*. 28 U.S.C.A. § 636(b)(1). I accept the Recommended Decision in all other respects.

## I. BACKGROUND

The following facts about the instant case arise from the Amended Complaint. I accept the well-pleaded facts from the Amended Complaint as true for the purpose of deciding the Defendants' Motion to Dismiss. *Airframe Sys., Inc. v. Raytheon Co.*,

601 F.3d 9, 11 (1st Cir. 2010). The facts pertaining to the prior Action derive from the Magistrate Judge's Recommended Decision (Case No. 1:18-cv-00275-GZS, ECF No. 286) on the defendants' Motion for Summary Judgment (Case No. 1:18-cv-00275-GZS, ECF No. 197) in that case, which the District Court accepted and the First Circuit affirmed on appeal. Because the objected-to portion of the Recommended Decision in this case requires me to revisit the constitutional claims asserted in the prior Action, background facts about those claims also draw on Gladu's complaint in the prior Action, as amended (Case No. 1:18-cv-00275-GZS, ECF Nos. 1, 37).

### A. The Instant Case

Gladu is incarcerated at the Maine State Prison in Warren. Gladu is openly gay and Department officials are aware of his sexual orientation.

On January 6, 2022, a used Playgirl magazine containing images of male nudity was delivered to the Maine State Prison, addressed to Gladu. A Department official, Casey Chadwick, reviewed the magazine and allowed it to be sent onward to Gladu. The magazine never made it to Gladu's cell. The Department reimbursed Gladu for the missing magazine after confirming it had been lost while in the Department's custody and control. On February 24, 2022, four used Playgirl magazines, sent by commercial distributors and addressed to Gladu, were delivered to the Maine State Prison. Again, Gladu never received the magazines. Unlike before, the Department official screening the magazines, Officer Reid, rejected them outright, purportedly because they had been sent by non-approved vendors and were received in used condition.

The Department's policy governing publications sent to prisoners provides, in relevant part:

1. Publications and other materials, including correspondence, sent to prisoners are prohibited if they contain any of the following:

    a. material that depicts or describes a nude child, the genitals, anus, or buttocks of a child, or the chest of a female child;
    b. material that depicts or describes any sexual act with, sexual contact with, or sexual touching of an animal or child;
    c. material that depicts or describes sexual violence, sadomasochism, or bondage;

    . . . .

    e. material that depicts or implies the commission of any sexual act involving penetration of the genitals, mouth or anus, regardless of the genders of the persons involved;

    . . . .

    k. any other material that is determined by the Chief Administrative Officer, or designee, to:
        i) constitute a threat to safety, security, or the orderly management of the facility;
        ii) contain sexually explicit material which, by its nature, poses a threat to the orderly management of the facility;
        iii) facilitate criminal activity; or
        iv) is substantially detrimental to a prisoner's rehabilitation, e.g. a sex offender receiving magazines containing pictures of children in underwear or otherwise not fully clothed.

    . . . .

5. Magazines and newspapers may be received by prisoners only if they are sent directly from publishers . . . or commercial distributors. Books may be received by prisoners only if they are sent directly from publishers or those commercial distributors approved by the Commissioner, or designee. . . .

ECF No. 61-1 at 14-16.[3]

---

[3] Gladu moved for the Court to take judicial notice of the Department's policy, last revised in September 2018, governing the publications and other materials sent to prisoners (ECF No. 56), and filed a copy of that policy with the Court (ECF No. 61-1). Magistrate Judge Nivison granted Gladu's motion conditionally, agreeing to take judicial notice of the policy "when it is relevant to an issue for the Court's consideration." ECF No. 63. Because the Department's policy is relevant to the

Part of the Department's justification for rejecting the four magazines—their used condition—contradicted the Department's recent past practice, as Chadwick had allowed Gladu to receive a used publication less than two months earlier. When Gladu inquired informally about the decision to screen the four magazines, Officer Reid responded dismissively. On March 9, 2022, Gladu filed a complaint with Defendant Magnusson, then the Maine State Prison warden, against Reid alleging discrimination on the basis of sexual orientation.

With his complaint against Reid pending, Gladu ordered several books containing male nudity, this time from Department-approved vendors. Eight books addressed to Gladu arrived at the Warren facility on March 16, 2022. Shortly after their arrival, Gladu received a notification from the Department that the books had been deemed contraband. On the same day he received the notice, Gladu submitted a grievance form to the Department to complain that screening the books amounted to arbitrary censorship. On March 21, 2022, a ninth book with images of male nudity arrived at the Warren facility addressed to Gladu. Days later, Gladu received notification from the Department that this latest book had been deemed contraband. Gladu again submitted a grievance form challenging the Department's decision as arbitrary censorship. In response to the filings, Defendants Magnusson and Hancox instructed a Department grievance review officer to dismiss Gladu's grievances. Gladu received a notice from the Department on April 25, 2022, that the books were

---

recommendation to dismiss Gladu's First Amendment, equal protection, and due process claims, I likewise take judicial notice of the policy for the purpose of deciding the Defendants' Motion to Dismiss.

rejected because they "constituted a threat to safety, security, or the orderly management of the facility." ECF No. 11 at 6, ¶ 63 (alteration omitted).

In the interim, on March 31, 2022, while Gladu was being moved to a "segregation unit," Department officials operating at Defendant Magnusson's instruction seized seven publications containing male nudity from Gladu's cell. ECF No. 11 at 5, ¶ 55. Chadwick previously authorized Gladu to have those publications, and Gladu had possessed them for over a year before the Department confiscated them. The Department did not fully investigate Gladu's complaints of discrimination, provide him with a meaningful opportunity to be heard about the incidents, or reimburse him for the seized materials. Defendants Magnusson, Hancox, and Liberty did not discipline the Department staff involved in screening and/or seizing the materials and did not train staff to address or prevent discrimination.

## B.     The Prior Action

Gladu's three constitutional claims in the prior Action arose from events that transpired between April and September 2018. Gladu alleged that several Department officials violated his First Amendment rights as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution by preventing him from receiving books he ordered or that others ordered on his behalf because, among other reasons, they purportedly contained content prohibited by Department policy. The defendants in the prior Action moved for summary judgment as to all of Gladu's claims, and the Magistrate Judge recommended granting the motion, which conclusion the District Court adopted and the First Circuit affirmed.

### 1. First Amendment Claim

Gladu alleged that the defendants in the prior Action violated his First Amendment rights by preventing him from receiving four books—ordered from a Department-approved vendor—under the false pretense that those materials included content prohibited by the Department's Publications and Prohibited Materials policy,[4] namely depictions of "sexual violence, sadomasochism, or bondage," and "sexual act[s] involving penetration of the genitals, mouth, or anus." Case No. 1:18-cv-00275-GZS, ECF No. 1 at 2-3, ¶ 17 (quoting Case No. 1:18-cv-00275-GZS, ECF No. 1-1 at 2, ¶ 2(c), (e)). He claimed that the defendants' conduct constituted unlawful censorship of male nudity with artistic value protected by the First Amendment and permitted by Department policy.

The Recommended Decision in the prior Action determined that the defendants there had denied Gladu access to the publications because they included content prohibited by Department policy. The Magistrate Judge in the prior Action also concluded that the Department's policy was reasonably related to legitimate penological interests, specifically the Department's efforts to rehabilitate prisoners

---

[4] The relevant portion of the policy that Gladu filed as an attachment to the complaint in the prior Action is similar, but not identical, to the policy of which the Court has taken judicial notice in this case. *Compare* Case No. 1:18-cv-00275-GZS, ECF No. 1-1, *with* Case No. 1:22-cv-00134, ECF No. 61-1 at 14-16. The Department policy at issue in this case was last amended in September 2018, two months after Gladu filed the complaint in the prior Action with a copy of an earlier version of the Department's policy attached as Exhibit A. *See* supra note 3. Although both versions of the policy restrict prisoner access to materials that depict and/or describe certain types of nudity and sexual acts and require that materials be sent by Department-approved publishers or commercial distributors, their sequencing of those requirements is distinct. Both versions also identify penological interests that could justify the Department to retain materials that prisoners order including, but not limited to, materials containing "sexually explicit material which, by its nature, poses a threat to the orderly management of the facility" and materials that are "substantially detrimental to a prisoner's rehabilitation, e.g. a sex offender receiving magazines containing pictures of children in underwear or otherwise not fully clothed." Case No. 1:18-cv-00275-GZS, ECF No. 1-1 at 2, ¶ 2(i)(ii), (iv); Case No. 1:22-cv-00134, ECF No. 61-1 at 15, ¶ 1(k)(ii), (iv).

and keep the prison population safe and secure. As a result, the Magistrate Judge concluded that the defendants in the prior Action were entitled to summary judgment on Gladu's First Amendment claim, which conclusion the District Court adopted.

### 2. Equal Protection Claim

Gladu also claimed in the prior Action that the defendants' actions violated the Fourteenth Amendment's Equal Protection Clause. In substance, Gladu alleged that the defendants' refusal to permit him access to content containing male nudity, considered together with their general practice of allowing prisoners to receive content containing female nudity, was unconstitutional disparate treatment that discriminated based on sexual orientation. Although the defendants in the prior Action moved for summary judgment on all of Gladu's claims, neither the Magistrate Judge's decision that recommended granting the defendants' motion nor the District Court's Order summarily affirming the Recommended Decision mentioned Gladu's equal protection claim or assessed its merits.

### 3. Due Process Claim

Finally, Gladu alleged that the defendants in the prior Action violated due process by seizing the publications he ordered without first providing him notice and an opportunity to be heard about whether the content in those publications was, in fact, prohibited by Department policy. Gladu claimed that the defendants deprived him of the opportunity to have other Department staff review the publications to determine whether they contained prohibited content and quickly disposed of the publications against Gladu's wishes. Gladu also alleged that the defendants violated his due process rights by dismissing his grievance for having failed to informally

8

resolve the matter, which, contrary to the defendants' representations, he claimed to have attempted. The Magistrate Judge recommended that the defendants in the prior Action were entitled to summary judgment on Gladu's Due Process claim, which the District Court accepted and the First Circuit affirmed.

## II. LEGAL STANDARD

"To establish federal claim preclusion . . . , a party must establish that there is '(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits.'" *Foss v. E. States Exposition*, 67 F.4th 462, 466 (1st Cir. 2023) (quoting *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 37 (1st Cir. 1998)). Courts in the First Circuit take a "transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes." *Airframe Sys.*, 601 F.3d at 15. Causes of action are sufficiently identical "if both sets of claims—those asserted in the earlier action and those asserted in the subsequent action—derive from a common nucleus of operative facts." *Silva v. City of New Bedford*, 660 F.3d 76, 79 (1st Cir. 2011) (quoting *Breneman v. U.S. ex rel. F.A.A.*, 381 F.3d 33, 38 (1st Cir. 2004)). Courts determine whether a common nucleus of operative facts exists "by looking to factors such as 'whether the facts are related in time, space, origin or motivation,' 'whether they form a convenient trial unit,' and whether treating them as a unit 'conforms to the parties' expectations.'" *Airframe Sys.*, 601 F.3d at 15 (quoting *In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001)). As to time, claim preclusion prevents a party from relitigating claims "that were not brought earlier

but grew out of the same nucleus of operative facts and 'should have been brought' in the earlier action.'" *Aristud-González v. Gov't Dev. Bank for P.R.*, 501 F.3d 24, 27 (1st Cir. 2007) (quoting *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 33 (1st Cir. 1996)).

### III.  DISCUSSION

Gladu's only particularized objection to the Recommended Decision is to the conclusion that the final judgment on his First Amendment, due process, and equal protection claims in the prior Action precludes his First Amendment, due process, and equal protection claims in this case.  The essence of Gladu's objection is that the second of the three prongs of the claim preclusion doctrine—"sufficient identicality between the causes of action asserted in the earlier and later suits"—is not satisfied here. *Foss*, 67 F.4th at 466 (quoting *Mass. Sch. of L. at Andover*, 142 F.3d at 37).  In support, Gladu argues that he brought the claims in the prior Action to challenge the accuracy of the determination by Department officials that publications he ordered contained prohibited content including images of "sexual penetration, bondage, BDSM, and alleged underage nudity."  ECF No. 79 at 2.  By contrast, Gladu characterizes his current claims as challenging different actions by Department officials, namely: (1) preventing him from accessing certain publications containing "mere adult nudity" not barred by Department policy; and (2) confiscating materials containing that permissible content, which the Department had reviewed and allowed him to possess for over a year before seizing it.  ECF No. 79 at 3.

The Defendants disagree and contend instead that "the claims in Plaintiff's prior lawsuit regarding his access to pornography were broad, and the judgment awarded to Defendants in that case bars subsequent claims 'with respect to all or any

10

part of the transaction, or series of connected transactions, out of which the action arose.'" ECF No. 92 at 2 (quoting *Porn*, 93 F.3d at 34). According to the Defendants, the relevant transaction is the "confiscation" of explicit publications, ECF No. 92 at 2, and any distinction between the types of pornography at issue in the two cases is beside the point.

The Recommended Decision concludes that the claims in the two cases are sufficiently similar to invoke the doctrine of claim preclusion because both sets of claims challenge the same policy restricting prisoner access to "adult material" in service of the same penological interests. ECF No. 64 at 6. For reasons I will explain, and construing Gladu's pleadings liberally, as I must, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), I conclude that his current First Amendment, due process, and equal protection claims are not precluded by the judgment entered on similar but distinguishable claims brought in the prior Action.

Gladu's complaint in the prior Action included the following allegations:

- "The 4 titles deemed prohibited content contained male nudity." Case No. 1:18-cv-00275-GZS, ECF No. 1 at 2, ¶ 15.

- "Under [Department] Policy . . . content containing nudity, regardless of gender, is not prohibited." Case No. 1:18-cv-00275-GZS, ECF No. 1 at 2, ¶ 16.

- "Upon information and belief, Defendants Waltz and Chadwick falsely claimed that said publications contained [m]aterial [that] dep[i]cts or describes sexual violence, sadomasochism, or bondage and material [that] depicts any sexual act involving penetration of the genitals, mouth, or anus, regardless of the genders of the persons involved, to unlawfully deprive and censor said material from the Plaintiff, because that content contained material that conflicted with those Defendants' personal beliefs (eg; gay oriented male nudity)." Case No. 1:18-cv-00275-GZS, ECF No. 1 at 2-3, ¶ 17 (quotation marks omitted).

11

These allegations reveal that the motivation underlying the allegedly unlawful conduct in the prior Action is distinct from the impetus for the Defendants' actions here. Gladu's claims in the prior Action were premised on the theory that the Department's purported reason for prohibiting him from having explicit materials was pretextual—an excuse motivated by sex-based discrimination, not a legitimate penological interest. Although Gladu alleges a similar discriminatory animus here, he does not claim that the Department used the content restrictions in its "Publications and Prohibited Material" policy as cover for its allegedly unlawful conduct. Instead, Gladu asserts that the Department legitimized decisions to withhold and confiscate certain publications from him either based on a different pretext—because materials were not sent by approved vendors or were received in used condition—or, in some instances, without offering any explanation about why certain publications had been deemed contraband. Accordingly, Gladu's current action does not challenge the Department's application of the same portions of its policy implicated by his claims in the prior Action, namely those restricting prisoner access to a narrow set of sexually explicit images. In short, Gladu alleges that the Department had distinct pretextual motives for the conduct underlying his claims in this case and in the prior Action.

Time is also on Gladu's side in the claim preclusion analysis. All relevant events in this case occurred between January and April of 2022, whereas the events underlying Gladu's claims in the prior Action occurred in 2018. Gladu brought the prior Action that same year, and the Court granted summary judgment to the defendants in that case in December 2020. In a similar vein, the origins of his claims

in this case are distinct from the alleged misconduct underlying his claims in the prior Action. As before, Gladu now alleges that the Department unlawfully screened publications he ordered and prevented him from ever possessing them. Here, however, Gladu alleges further that the Department confiscated publications containing male nudity from his cell that an official had previously reviewed and allowed Gladu to keep when he was moved temporarily to a segregation unit. Moreover, Gladu alleges that the Department's review and approval of the material it later confiscated occurred after he brought the claims in the prior Action. These distinctions in time and origin work against concluding that Gladu's claims here and in the prior Action "arise out of the same transaction, seek redress for essentially the same basic wrong, *and* rest on the same or a substantially similar factual basis." *Porn*, 93 F.3d at 34 (emphasis added). Gladu could not have known the facts necessary to bring the claims made in this case when he filed the prior Action. It is, therefore, not reasonable to expect that he would have raised his current claims in a case that ended before the similar, yet factually distinguishable, conduct he challenges here occurred. *Cf. id.* at 37 (considering the "parties' expectations" as part of the claim preclusion analysis).

In sum, the distinct timing, origin, and motivations at play in this case and in the prior Action suffice to conclude that the two sets of claims are not so identical to support the dismissal of Gladu's First Amendment, due process, and equal protection claims here under the doctrine of *res judicata*. That the judgment in the prior Action did not specifically decide the merits of Gladu's earlier equal protection claim lends

13

additional support for concluding that his equal protection claim here deserves a merits review.

## IV.  OTHER PENDING MOTIONS

Finally, also under advisement is a raft of motions filed by Gladu related to the Defendants' Motion to Dismiss: (1) an Objection (ECF No. 85) to the Court's Order (ECF No. 81) denying Gladu's Motion to Extend Time to Respond to the Recommended Decision (ECF No. 78); (2) a Motion for an Evidentiary Hearing on Gladu's Purported Access to His Legal File (ECF No. 88); a Motion for an Order Directing the Defendants to Secure/Preserve Evidence (ECF No. 89); and (4) a Motion for Clarification (ECF No. 93).  Because Gladu has already brought an objection (ECF No. 79) that the Court afforded him over three months to file—far longer than the customary fourteen days allowed under the Federal Rules of Civil Procedure and this District's Local Rules—his renewed request for additional time to object is denied as moot.  *See* Fed. R. Civ. P. 72(b)(2); D. Me. Local R. 72.1(a).  As to Gladu's motions for an evidentiary hearing and for an order directing the Defendants to secure and preserve evidence, I see no basis for the requested relief, and the motions are denied.  However, I note that as this case proceeds beyond the initial pleading stage, the parties will be bound by the rules of discovery, *see generally* Fed. R. Civ. P. 26, which, in cases brought by prisoners alleging civil rights violations, "shall ordinarily be completed within 4 months of the issuance of the scheduling order," D. Me. Local R. 16.1(b)(4).  The parties may request a scheduling conference to, among other things, discuss issues about preserving discoverable information and develop a discovery plan, after which a scheduling order shall issue.  *See* Fed. R. Civ. P. 26(f)(2)-(3); *see*

*also* D. Me. Local R. 16.2.  Gladu's motion for clarification, by which he sought leave to submit additional information pertinent to his objection to the Recommended Decision, is denied as moot.

## V.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Magistrate Judge's Recommended Decision (ECF No. 64) is hereby **REJECTED IN PART** as to the proposed disposition for Counts I, II, and III, and **ACCEPTED IN PART** in all other respects.  The Defendants' Motion to Dismiss (ECF No. 54) is **GRANTED IN PART** as to Counts IV-VII and **DENIED IN PART** as to Counts I-III.  The Plaintiff's Objection to the Order Denying His Request for Further Time to Respond to the Recommended Decision (ECF No. 85) and Motion for Clarification (ECF No. 93) are **DENIED** as moot.  The Plaintiff's Motions for an Evidentiary Hearing (ECF No. 88) and for an Order Directing the Defendants to Secure/Preserve Evidence (ECF No. 89) are **DENIED**.

SO ORDERED.

Dated this 25th day of April, 2024.

                                                        **/s/ Jon D. Levy**
                                                 **U.S. DISTRICT JUDGE**