UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-cv-00134-SDN |
| | ) | |
| MATTHEW MAGNUSSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Plaintiff Nicholas Gladu has sued various employees and administrators at the Maine State Prison ("MSP"), where Mr. Gladu is incarcerated, for allegedly violating his rights by preventing him from obtaining magazines and books with images of male nudity. Mr. Gladu raised similar claims in a prior lawsuit, which the Court rejected on the merits at summary judgment, when MSP employees disallowed books depicting "sadomasochism and bondage" and "nude photos of children." *See Gladu v. Waltz*, No. 18-CV-00275, 2020 WL 6385618 (D. Me. Oct. 30, 2020), *R&R adopted*, 2020 WL 7344706 (Dec. 14, 2020), *aff'd*, No. 21-1010, 2022 WL 20437774 (1st Cir. Oct. 24, 2022).

In this suit, Mr. Gladu makes seven new claims regarding his access to materials with male nudity. His first three claims invoke the First Amendment, equal protection, and due process (Counts I–III). He also alleges conspiracy, unconstitutional taking, violation of the Maine Civil Rights Act, and retaliation (Counts IV–VII).

These new claims are based on alleged events since his prior lawsuit. He named Matthew Magnusson, James Hancox, and Randall Liberty ("Named Defendants") in the operative First Amended Complaint ("FAC"), along with John Does 1–7 ("John Doe Defendants"). The Named Defendants moved to dismiss on April 25, 2023. The

Magistrate Judge recommended dismissing all of Mr. Gladu's claims, but the Court rejected the recommendation in part and allowed Counts I–III to go forward.

Mr. Gladu then sought leave to file a Third[1] Amended Complaint ("TAC"). In the TAC, Mr. Gladu attempts to revive the dismissed Counts IV–VII and replace three of the John Doe Defendants with named individuals: Myles Reid, Andrew Stanley, and Joseph Theriault. ECF No. 125. The Magistrate Judge recommended allowing Mr. Gladu to add Mr. Reid and Mr. Stanley as defendants and recommended denying Mr. Gladu's motions in all other respects. ECF No. 193. Mr. Gladu, Mr. Hancox, and Mr. Liberty objected to the relevant portions of the Magistrate Judge's recommendation that go against their positions, ECF Nos. 194, 196, and those objections now are before the Court.

For the following reasons, I allow Mr. Gladu to amend his complaint to revive the previously dismissed counts and to add Mr. Reid and Mr. Stanley as defendants. However, Mr. Gladu may not add Mr. Theriault as a defendant.

## FACTUAL HISTORY[2]

Mr. Gladu is incarcerated at the MSP. He openly identifies as "gay/queer." ECF 125-1 at 1. According to Mr. Gladu, Maine Department of Corrections ("MDOC") policy number 21.2 permits prisoners at MSP to possess printed materials depicting adult nudity, regardless of the gender depicted. Mr. Gladu also claims MDOC policy requires

---

[1] Earlier in the litigation, Mr. Gladu sought to file a Second Amended Complaint adding the Named Defendants' counsel as a defendant, ECF No. 18, which the Magistrate Judge denied, ECF No. 45; ECF No. 49 (adopting R&R).

[2] These facts are drawn from the proposed TAC. ECF No. 125-1. Because the Named Defendants oppose the motion to amend on futility grounds in part, the Court must "assess whether [the] proposed amended complaint withstands a Rule 12(b)(6) motion" and therefore accepts the TAC's facts as true, drawing all reasonable inferences in Mr. Gladu's favor, for the analysis. *Efron v. UBS Fin. Servs. Inc. of P.R.*, 96 F.4th 430, 437 (1st Cir. 2024).

all decisions regarding prisoner access to such materials to be made in an objective manner, in accordance with the content policy.

Between March 2019 and March 2022, Mr. Gladu purchased approximately ten books and magazines depicting adult male nudity. Officer Casey Chadwick, the "Property/Media Review Officer" at the time, screened and approved each item.[3] During the years Mr. Gladu possessed these materials, there were "no issues or incidents of any kind," *id.* at 3, and Mr. Gladu did not share the materials with any fellow inmates.

In February 2022, Mr. Chadwick was promoted and therefore vacated his position as Media Review Officer. Officer Myles Reid took on the position as a temporary Media Review Officer. Mr. Gladu claims Mr. Reid did not receive any formal training on MDOC's screening policies and relied on his "personal predilections" to screen incoming materials. *Id.* at 8.

Around that time, Mr. Gladu began "experiencing issues" receiving his materials. At first, magazines he ordered were not delivered. For example, on January 6, 2022, Mr. Chadwick approved a used Playgirl magazine sent to Mr. Gladu. Mr. Chadwick placed the approved magazine into a bag labeled with Mr. Gladu's name and MDOC number and left it in a bin to be delivered to Mr. Gladu's unit. Unidentified officers who worked on the "B-Shift" ("B-Shift John Does") retrieved the bag with Mr. Gladu's magazine.[4] But instead of delivering it to Mr. Gladu's unit, the B-Shift John Does opened the bag and disposed of

---

[3] On two occasions, Mr. Chadwick denied Mr. Gladu access to certain non-allowed materials depicting explicit sexual acts—a decision Mr. Gladu does not object to.

[4] Both the FAC and TAC refer to various John Doe Defendants by number, but the numbers are mixed up between the two complaints. The FAC uses "John Does 1–3" to refer to three media review officers, "John Does 4–6" to refer to staff members from the B-Shift, and John Doe 7 to refer to an unknown Grievance Review Officer. The TAC, on the other hand, refers to the media review officers by name and uses "John Does 1–3" to refer to the B-Shift staff. To avoid confusion, the Court uses the moniker "B-Shift John Does" when discussing the TAC.

the magazine. Mr. Gladu claims the B-Shift John Does disposed of Mr. Gladu's magazine because they have "anti-gay animus" and find "material with mere male nudity personally offensive." *Id.* at 9.

MSP reimbursed Mr. Gladu for his magazine. The unit manager assigned to Mr. Gladu's unit informed Mr. Gladu the B-Shift John Does would be barred from delivering prisoner property in the future.

On February 24, 2022, after Mr. Reid assumed his post as temporary Media Review Officer, Mr. Reid rejected delivery of four Playgirl magazines Mr. Gladu had ordered. Mr. Reid justified the rejection on the grounds that the magazines were not from an approved vendor and were in used condition. Mr. Gladu believes no such requirement exists. Indeed, Mr. Gladu claims Mr. Reid approved similar magazines depicting female nudity from the same commercial distributor, also in used condition, for other prisoners.

According to Mr. Gladu, although MDOC policy requires vendors to be approved to send books, any publisher or commercial distributor may send magazines. Mr. Gladu's Playgirl magazines were sent by a commercial distributor—the same distributor other prisoners order from without issue.

At one point Mr. Reid stated, "I didn't sign up for this job to look at magazines with dick all day." *Id.* at 10. Mr. Reid also told other inmates that publications depicting male nudity "disgusted" him. *Id.* On March 4, 2022, Mr. Gladu told Mr. Reid that Mr. Gladu believed Mr. Reid inconsistently applied MDOC policy in rejecting Mr. Gladu's magazines. Mr. Reid responded, "Too bad, nothing will be changing," and ended the conversation. *Id.* at 10.

4

Soon after, on March 9, 2022, Mr. Gladu filed a formal complaint against Mr. Reid with MSP Warden Matthew Magnusson for discrimination on the basis of sexual orientation and discriminatory application of MDOC policy.

While the internal complaint was pending, Mr. Gladu asked his brother to order him books depicting male nudity from two approved vendors, Amazon and Hamilton Books. On March 16, 2022, eight books containing adult male nudity that Mr. Gladu believes MDOC policy permits were delivered to MSP for Mr. Gladu. *Id.* at 10–11. Two days later, Mr. Gladu learned from a "Property Contraband Disposition Form" that MDOC had rejected all eight books. The form did not state any reason for the rejection. Mr. Gladu claims MDOC policy requires any censorship decision to state the rationale for the decision. On March 21, 2022, MSP received another book depicting adult male nudity for Mr. Gladu. Again, Mr. Gladu learned of the book's rejection from a Property Contraband Disposition Form that did not state the rationale for the rejection.

On March 28, 2022, Mr. Gladu overheard Officer Andrew Stanley tell another prisoner that Mr. Stanley had been assigned as the new Media Review Officer, so Mr. Gladu spoke with him about the recent book orders. Mr. Stanley initially claimed he had rejected the books because they came from non-approved vendors and because he believed MDOC policy barred depictions of male nudity.

Mr. Stanley told Mr. Gladu, "Look man, I don't know what you did to piss them off, but they defin[i]tely got it out for you right now," in reference to Mr. Magnusson and other prison staff's feelings toward Mr. Gladu. *Id.* at 11. According to Mr. Stanley, Mr. Magnusson and James Hancox (Mr. Magnusson's assistant) instructed Mr. Stanley to tell Mr. Gladu the books had been rejected for coming from non-approved vendors, but in

fact Mr. Magnusson and Mr. Hancox had placed Mr. Gladu on a "porn restriction" because they did not approve of materials depicting male nudity. *Id.* at 11.

On March 31, 2022, MSP moved Mr. Gladu to the segregation unit for unstated disciplinary reasons. At that time, Mr. Magnusson and Mr. Hancox directed staff to seize Mr. Gladu's books. Mr. Gladu sent multiple written requests to Mr. Magnusson and Mr. Hancox for information regarding the alleged pornography restriction. He did not receive a response.

Mr. Gladu believes he is the only prisoner at MSP categorically restricted from possessing materials with adult nudity of any kind. However, he claims MSP also denies other gay and bisexual prisoners access to publications depicting adult male nudity, while allowing non-LGBTQ+ prisoners to possess publications depicting adult female nudity.

Mr. Gladu's unit manager told Mr. Gladu that the pornography restriction had been in effect since Mr. Gladu's prior lawsuit was resolved. Mr. Gladu asserts Mr. Magnusson and Mr. Hancox are claiming that the Court's ruling in the prior lawsuit prohibits Mr. Gladu from possessing *any* depictions of nudity, even material otherwise permitted under MDOC policy, which Mr. Gladu posits is an improper over-reading of the prior ruling. In any event, Mr. Gladu argues Mr. Magnusson and Mr. Hancox's claimed reliance on the Court's prior ruling is a mere pretext for their retaliatory actions. According to Mr. Gladu, Mr. Magnusson and Mr. Hancox restricted his access to materials with adult male nudity in retaliation for protected conduct—namely, Mr. Gladu's filing an internal discrimination complaint against Mr. Reid, filing internal grievances, and threatening to sue over MSP employees' discriminatory and censorious conduct.

On March 18, 2022, and March 27, 2022, Mr. Gladu submitted internal grievances challenging the decisions of the Media Review Officers to reject his materials. According

to Mr. Gladu, when a prisoner files such a grievance, MDOC policy requires a Grievance Review Officer ("GRO") to review the Media Review Officer's decision. GRO decisions may be appealed to the Warden. Mr. Gladu submitted his grievances to Officer Joseph Theriault, who was the GRO at MSP. Mr. Gladu alleges Mr. Theriault failed to even process those grievances, which prevented Mr. Gladu from further appealing those grievances to the warden, Mr. Magnusson.

In June 2022, after Mr. Gladu filed this lawsuit, MSP staff seized erotic fiction books in his possession. Mr. Gladu claims such books are widespread in prisons and can even be checked out from unit libraries. According to Mr. Gladu, Defendants have no legitimate reason to prohibit him from possessing erotic books or magazines with adult male nudity.

The proposed amended complaint names six Defendants: Mr. Magnusson, Mr. Hancox, Mr. Theriault, Mr. Reid, and Mr. Stanley, as well as the commissioner of the MDOC, Randall Liberty. The proposed amended complaint also identifies as Defendants the three unnamed prison staff from "B-shift" responsible for delivering prisoner property to Mr. Gladu's unit.

Mr. Gladu alleges seven distinct claims and seeks relief under 42 U.S.C. §§ 1983 and 1985. Count I alleges Defendants violated Mr. Gladu's First Amendment rights by intentionally restricting Mr. Gladu's access to publications with adult male nudity, without any legitimate penological interest for doing so. Count II alleges Defendants denied Mr. Gladu equal protection on the basis of his sexual orientation in violation of the Fourteenth Amendment. Count III alleges Defendants denied Mr. Gladu due process of law in violation of the Fourteenth Amendment by seizing his property without notice or opportunity to be heard. Count IV alleges Defendants conspired to deprive Mr. Gladu of

his rights by engaging in a concerted effort to fabricate rationales for withholding access to Mr. Gladu's materials. Count V alleges Defendants violated the Takings Clause of the Fifth Amendment by seizing seven of his books and magazines without compensation. Count VI alleges Defendants violated the Maine Civil Rights Act by discriminating against him on the basis of sexual orientation.[5] Count VII alleges Defendants retaliated against him for engaging in protected conduct.

## PROCEDURAL HISTORY

The procedural history of this case is complex. Mr. Gladu filed his Complaint on May 4, 2022,[6] ECF No. 1, and simultaneously moved to proceed in forma pauperis (IFP), ECF No. 2. The Magistrate Judge granted the motion to proceed IFP, ECF No. 3, but Mr. Liberty moved for the Court to revoke Mr. Gladu's IFP status, ECF No. 4, which the Magistrate Judge denied, ECF No. 33.

While the dispute over Mr. Gladu's IFP status was pending, Mr. Gladu amended his Complaint once as of right (the FAC). ECF No. 11. Mr. Gladu then moved to file a Second Amended Complaint adding the Named Defendants' counsel as a defendant, ECF No. 18, which the Magistrate Judge denied, ECF No. 45; ECF No. 49 (accepting R&R).

After the IFP dispute was resolved, the Magistrate Judge completed the preliminary review under 28 U.S.C. § 1915A and ordered the FAC be served. *See* 28 U.S.C. § 1915(d) (requiring officers of the Court to "issue and serve all process" in IFP cases). To

---

[5] For this state law claim, Mr. Gladu seeks relief under 5 M.R.S. § 4682.

[6] The Court received Mr. Gladu's Complaint on May 9, 2022. Because Mr. Gladu was incarcerated, the mailbox rule applies to his filings. *Casanova v. Dubois*, 304 F.3d 75, 78–79 (1st Cir. 2002) (adopting mailbox rule for prisoner complaints). The mailbox rule treats pleadings as filed on "the date on which the prisoner commits the mail to the custody of prison authorities." *Id.* at 79. When the envelope containing a prisoner's mailed filing is available on the docket, courts typically use the postmark date as the date of filing. *See, e.g.*, *Breese v. Maloney*, 322 F. Supp. 2d 109, 112 n.2 (D. Mass. 2004). Here, the Complaint was postmarked on May 4, 2022, so the Court considers Mr. Gladu's Complaint filed on that date. ECF No. 1-1.

do so, the Court posted a notice on the docket pursuant to an "Agreement on Service" between the Clerk of Court and the Maine Attorney General. ECF No. 52; *see* D. Me. Local R. App. III. The Agreement on Service provides that in IFP cases involving the State of Maine or its employees, the case manager will add the Maine Attorney General as a "Notice Only Party" to the electronic docket, such that the Attorney General's Office receives electronic notice of all case activity. D. Me. Local R. App. III. When the Court orders service, the clerk enters a standard notice on the docket which "constitutes service as directed by the court." *Id.* The Attorney General then has thirty days to accept or decline service: "If service is accepted, it shall constitute both proof of service and acceptance of service . . ."; if "service is declined, the Attorney General, shall to the extent able, explain the reason for declination" and the Court "shall immediately order in-hand service by the United States Marshals Service." *Id.*

In this case, the Attorney General accepted service on behalf of Named Defendants Mr. Magnusson, Mr. Hancox, and Mr. Liberty. ECF No. 53. The Attorney General's acceptance of service did not mention the John Doe Defendants. At this point—more than ten months after Mr. Gladu initially filed his Complaint—the sixty-day answer period began to run. *See* Fed. R. Civ. P. 4(d)(3).

The Named Defendants moved to dismiss, ECF No. 54, which the Magistrate Judge recommended granting, ECF No. 64. The Court agreed in part, allowing Counts I–III (First Amendment, equal protection, and due process claims) to proceed and dismissing Counts IV–VII (conspiracy, unauthorized taking of property, Maine Civil Rights Act, and retaliation claims). ECF No. 96. At that point, on May 2, 2024, new private counsel appeared for Mr. Magnusson; since that time, Mr. Magnusson mostly has filed his own papers separate from Mr. Hancox and Mr. Liberty.

After the decision on their motion to dismiss, the Named Defendants timely answered the FAC on May 20 and 21, 2024. ECF Nos. 105, 106. The Magistrate Judge issued a scheduling order setting the following relevant deadlines: August 8, 2024, to amend the pleadings or join parties, and October 10, 2024, to complete discovery, ECF No. 108.

Around the same time, Mr. Gladu filed two motions regarding the John Doe Defendants. First, approximately a week and half before the Named Defendants filed their answers, Mr. Gladu moved for "assistance" identifying the John Doe Defendants. ECF No. 104. Mr. Gladu explained he "need[ed] to know the names/identities of those defendants in order to properly serve discovery documents and requests." *Id.* The Named Defendants opposed the motion as premature because Mr. Gladu could obtain that information through discovery and stated their belief that Mr. Stanley in particular "is not a defendant in this matter." ECF No. 107, 109. In reply, Mr. Gladu claimed that "Officer Stanley is named as a party to Plaintiff's complaint" and "Plaintiff explained [in the FAC] that Officer Stanley would be designated as a John Doe Defendant for the time being because Plaintiff did not know Officer Stanley's full legal name." ECF No. 111.

Three weeks later, before the Magistrate Judge ruled on Mr. Gladu's motion for assistance, Mr. Gladu filed a motion requesting a status update on service of process on the John Doe Defendants. ECF No. 113. Mr. Gladu accurately stated the Attorney General's Office had not accepted service on behalf of the John Doe Defendants. Before any defendants responded to the request for a status update, the Magistrate Judge granted Mr. Gladu's motion for assistance in identifying the John Doe Defendants in part, ordering Mr. Hancox and Mr. Liberty to identity the John Doe Defendants to the extent possible. ECF No. 118.

On June 14, 2024, Mr. Hancox and Mr. Liberty made two filings with the Court. First, they objected to the Magistrate Judge's order requiring them to identify the John Doe Defendants because they had already done so: on June 10, 2024 (three days after the Magistrate Judge's order) they had provided Mr. Gladu with Mr. Reid and Mr. Stanley's first names, as well as the identity of a Grievance Review Officer. ECF No. 121. Mr. Hancox and Mr. Liberty claimed they could not reasonably identify the other John Doe Defendants.

Second, Mr. Hancox and Mr. Liberty responded to Mr. Gladu's motion requesting a status update on service. ECF No. 122. Counsel for Mr. Hancox and Mr. Liberty reiterated that they had provided Mr. Gladu with names of the three John Doe Defendants described above. *Id.* However, Mr. Hancox and Mr. Liberty claimed counsel for the Named Defendants could not accept service on behalf of any John Doe Defendants, including those for whom they had provided names. *Id.*

On June 21, 2024, the Magistrate Judge granted Mr. Gladu's motion to "advise as to the status of service" on the John Doe Defendants, ECF No. 130, and explained as follows:

> In their objection to the Court's order on Plaintiff's earlier motion, Defendants Hancox and Liberty represent that they have provided identifying information as to three individuals who were not specifically named as parties but have been referenced by Plaintiff. If Plaintiff believes the three named individuals are among the John Doe defendants, Plaintiff shall move to substitute the individuals for the appropriate John Does.

*Id.* In fact, by the time the Magistrate Judge issued that order, Mr. Gladu had already (just one week prior) moved to file a Third Amended Complaint ("TAC") naming those three individuals—Joseph Theriault, Andrew Stanley, and Myles Reid (the "New

Defendants")—as defendants. ECF No. 125. Mr. Gladu's motion to amend was filed in June 2024, before the August 8, 2024, deadline to amend the pleadings. *See* ECF No. 108.

Then, after the Magistrate Judge issued the order, but still before the August 8, 2024, deadline, Mr. Gladu formally moved to substitute those named individuals for John Does 1–3 pursuant to the Magistrate Judge's order. ECF No. 134. Mr. Hancox and Mr. Liberty jointly opposed both motions, ECF No. 135, and Mr. Magnusson separately joined their opposition.[7]

The Named Defendants raised three arguments against granting leave to amend. First, they argued Mr. Gladu unduly delayed in naming Mr. Reid, Mr. Stanley, and Mr. Theriault as defendants because he knew about the claims against those individuals when he filed his original Complaint. Second, they argued amendment would be futile, because Mr. Gladu's claims against Mr. Reid and Mr. Stanley are conclusory and because Mr. Gladu's claims against Mr. Theriault rely on a non-existent constitutional interest in effective prison grievance procedures and therefore fail to state a claim. Third, they argued Mr. Gladu could not amend his complaint as of right for a second time.

The Magistrate Judge treated Mr. Gladu's motion to substitute as a "supplement to the motion to amend" and recommended the Court grant Mr. Gladu's motions to

---

[7] It is not clear whether Mr. Magnusson was entitled to adopt the other Named Defendants' arguments by reference. Mr. Magnusson cites Federal Rule of Civil Procedure 10(c), which by its terms only permits adopting "[a] statement in a *pleading*" by reference. Fed. R. Civ. P. 10(c). Nonetheless, some courts allow parties to adopt a co-party's arguments for the sake of efficiency. *Compare, e.g.*, *Smith v. LVNV Funding, LLC*, No. 11-CV-356, 2014 WL 4441195, at *1 (E.D. Tenn. Sept. 9, 2014) (noting one defendant "adopts by reference the same arguments advanced in" other defendants' motion for summary judgment), *with Express Scripts, Inc. v. Kincaid*, No. 19-CV-00007, 2020 WL 3027200, at *2 n.3 (E.D. Tenn. June 5, 2020) ("Rule 10(c) only permits parties to adopt, by reference, statements made in pleadings, not other motions. Accordingly, [one party's] incorporation of [the other party's] arguments for summary judgment was improper." (citations omitted)). Because the Court largely allows Mr. Gladu's amendment (except as to Mr. Theriault), the result is the same whether or not Mr. Magnusson properly opposed Mr. Gladu's motion and so the Court need not decide the matter.

substitute Mr. Stanley and Mr. Reid for two John Doe Defendants and deny Mr. Gladu's motions in all other respects. ECF No. 193 (the "Recommended Decision"). Mr. Gladu, Mr. Hancox, and Mr. Liberty (but not Mr. Magnusson) objected to the portions of the Recommended Decision that went against them. ECF Nos. 194, 196.

## STANDARD OF REVIEW

While the Court usually reviews a Magistrate Judge's decision on a motion to amend under the deferential standard applied to nondispositive motions, "a decision rejecting an objection to amendment on futility grounds is actually a dispositive motion since it entails an analysis of whether the proposed count can survive a motion to dismiss for failure to state a claim." *Libby v. Webber Hosp. Ass'n*, No. 13-CV-00238, 2014 WL 12726045, at *1 (D. Me. Feb. 28, 2014). Therefore, the Court reviews Mr. Gladu's motion for leave to file the TAC de novo. Fed. R. Civ. P. 72(b)(3). Still, the Court need only consider arguments raised before the Magistrate Judge. *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.").

## DISCUSSSION[8]

A plaintiff suing in federal court is entitled to amend their complaint only once as a matter of course. The plaintiff may choose when to exercise that option: either within "21 days after serving" the original complaint, Fed. R. Civ. P. 15(a)(1)(A), or within the earlier of "21 days after service of a responsive pleading or . . . motion [to dismiss]," Fed.

---

[8] Mr. Gladu's motion to substitute is duplicative of his motion to amend because his proposed TAC already names the three people he later seeks to substitute. Therefore, the Court's resolution of Mr. Gladu's motion to amend disposes of his motion to substitute.

R. Civ. P. 15(a)(1)(B). But a plaintiff may not do both, because "[a] party may amend its pleading *once* as a matter of course." Fed. R. Civ. P. 15(a)(1) (emphasis added). If the plaintiff amends his complaint immediately after serving it, he must seek "the opposing party's written consent or the court's leave" to further amend the complaint—even if the opposing party subsequently files a responsive pleading or moves to dismiss. Fed. R. Civ. P. 15(a)(2). A post-amendment responsive pleading does not grant the plaintiff a second chance to amend. Mr. Gladu amended his Complaint within twenty-one days of serving it, before Defendants responded or moved to dismiss. Therefore, Mr. Gladu requires the Court's leave to file his TAC.

District courts "should freely give leave [to amend] when justice so requires." *Id.* "This does not mean, however, that a trial court must mindlessly grant every request for leave to amend." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006). A court may deny leave to amend where the circumstances indicate "undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006).

An amendment is futile if the proposed complaint "fail[s] to meet the pleading standards of [Federal Rule of Civil Procedure] 12(b)(6)." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Under Rule 12(b)(6), the Court applies a two-step inquiry: First, "isolate and ignore statements in the [proposed] complaint that simply offer legal labels and conclusions." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Second, "take the [proposed] complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.*

14

The rigidity of that framework is slightly loosened because Mr. Gladu represents himself. Pro se pleadings must "'be liberally construed' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). That broad solicitude toward unrepresented parties "does not require [the Court] to conjure up unpled allegations," however, *Viera v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)), nor does it permit the Court to "rewrite a petition to include claims that were never presented," *id.* (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999)).

The motion to amend essentially presents four issues. First, whether Mr. Gladu should be given leave to amend Counts IV–VII, which were previously dismissed by the Court. Second, whether Mr. Gladu may add Mr. Reid and Mr. Stanley as defendants. The analysis for Mr. Reid and Mr. Stanley largely overlaps because the claims against them stem from their actions as Media Review Officers at MSP. Third, whether Mr. Gladu can add Mr. Theriault as a defendant. Fourth, if the operative complaint going forward is the TAC or the FAC.

## I.    Counts IV–VII

Counts IV–VII of the TAC assert claims of conspiracy, unauthorized taking of property, violation of Maine's Civil Rights Act, and retaliation. The Court previously dismissed Counts IV–VII of the FAC based on issue preclusion (as to Count V), failure to state a claim (as to Counts IV and VII), and lack of supplemental jurisdiction (as to Count VI). ECF No. 64 (R&R); ECF No. 96 (affirming R&R in relevant part).

Usually, dismissal is a "final judgment that 'slam[s] the door shut on the possibility of future amendments to the complaint.'" *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 242 (1st Cir. 2004) (alteration in original) (quoting *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 629 (1st Cir. 2000)). Here, the Court did not enter final judgment on Counts IV–VII because Counts I–III remained pending. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action . . . ."). Therefore, the Court's previous dismissal of Counts IV–VII does not operate as a final judgment and the Court must freely grant leave to amend absent undue delay, bad faith, futility, or a lack of due diligence on Mr. Gladu's part. *Palmer*, 465 F.3d at 30 ("Amendments may be permitted pre-judgment, even after a dismissal for failure to state a claim . . . ."). Plaintiffs generally are entitled to amend a complaint with "changes that [are] directly responsive to the district court's stated reasons for dismissing the original complaint," or even "incorporat[ing] some new information" into the amended complaint. *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022).

While the TAC asserts no new causes of action, the TAC contains new and more detailed factual allegations than the FAC to support Counts IV–VII. Indeed, the TAC is nearly twice as long as the FAC. Those factual allegations in the body of the TAC, not the bare legal conclusions of the causes of action, inform the Court's analysis under the Rule 12(b)(6) standard. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011).

The Magistrate Judge denied leave to amend Counts IV–VII. ECF No. 193. Mr. Gladu objected to this aspect of the Recommended Decision. ECF No. 194 at 3–4. Therefore, the Court reviews the motion for leave to amend Counts IV–VII de novo.

16

The Named Defendants did not oppose Mr. Gladu's motion to amend Counts IV–VII. The Named Defendants' responses to Mr. Gladu's motion to amend challenged only the addition of the three John Doe Defendants. *See* ECF No. 127 at 2 ("Plaintiff should not be permitted to amend again *to add Reid, Stanley, or Theriault . . . .*" (emphasis added)); *id.* at 3("[T]he allegations *against Officers Reid and Stanley* are conclusory and insufficient to state a cause of action . . . ." (emphasis added)).

For his part, Mr. Gladu maintains in his objection that the TAC "cure[s] the deficiencies previously noted by the Court" that were "the purported basis of that prior dismissal" of Counts IV–VII. ECF No. 194 at 3–4. This echoes his argument, first made in the motion to amend, that the FAC lacked certain "necessary[,] essential[,] and supplemental facts," and the TAC therefore allegedly "correct[s] defects and other technical issues with [the FAC]." ECF No. 125. As such, Mr. Gladu's briefing squarely raises the argument that he is entitled to amend his complaint to make changes "directly responsive to the district court's stated reasons for dismissing" his claims. *Amyndas Pharms.*, 48 F.4th at 40.

The Named Defendants do not address Mr. Gladu's arguments supporting his motion to amend Counts IV–VII in their response to his objection. *See* ECF No. 196. Nor did they address any aspect of Counts IV–VII of the TAC—which allegedly cures defects in the FAC—in their opposition to his motion to amend. *See* ECF No. 127.

Therefore, because the Court must give leave to amend "freely," Fed. R. Civ. P. 15(a)(2), and no defendant raised any argument against amending Counts IV–VII, the

Court will grant Mr. Gladu's motion to amend Counts IV–VII.[9] Granting leave to amend does not prevent a defendant from later moving to dismiss the amended complaint, but "it is cleaner to address the merits" on a motion to dismiss with the benefit of full briefing than on a motion to amend. *Light v. Town of Livermore*, No. 21-CV-00266, 2022 WL 3154762, at *3 (D. Me. Aug. 8, 2022) (declining to address questions of standing and mootness "under the shadow of the 'freely given' standard" of Rule 15(a)).

## II.    Addition of Mr. Reid and Mr. Stanley

Mr. Hancox and Mr. Liberty object to the Recommended Decision insofar as it permits Mr. Gladu to add Mr. Reid and Mr. Stanley as Defendants. Mr. Hancox and Mr. Liberty argue leave to amend should be denied because Mr. Gladu unduly delayed in adding Mr. Reid and Mr. Stanley as Defendants and because amendment would be futile. *See Palmer*, 465 F.3d at 30.

## A.  Undue Delay

Although delay alone is not enough to bar amendment, *Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000), *undue* delay is, *see In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014). Delay is undue when it causes prejudice. *Carmona*, 215 F.3d at 136. And "in assessing whether delay is undue, a court will take account of what the movant 'knew or should have known and what he did or should have done.'" *Lombardo*, 755 F.3d at 3–4

---

[9] Count VI asserts a claim under the Maine Civil Right Act. 5 M.R.S. § 4682. The Magistrate Judge initially dismissed Count VI of the FAC on jurisdictional grounds because all pending federal claims had been dismissed. ECF No. 64 at 10; *see* 28 U.S.C. § 1367(c)(3). While the Court ultimately rejected the dismissal of some federal claims, the Court did not reassert supplemental jurisdiction over Count VI. *See* ECF No. 96. Now, with all of Mr. Gladu's federal claims revived, and because none of the factors in § 1367(c) counsel against exercising jurisdiction, the Court will exercise its supplemental jurisdiction over Count VI. *See Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012) ("The normal rule is that the federal courts must exercise their jurisdiction and decide cases brought before them."); 28 U.S.C. § 1367(a) (explaining "district courts *shall* have supplemental jurisdiction" over related claims (emphasis added)).

(quoting *Invest Almaz v. Temple–Inland Forest Prods. Corp.*, 243 F.3d 57, 72 (1st Cir. 2001)).[10]

Mr. Gladu did not unduly delay in naming Mr. Reid and Mr. Stanley as Defendants. The Court begins with what Mr. Gladu "knew or should have known" when he filed the FAC. *Id.* As Defendants concede, it is clear from the FAC that Mr. Gladu knew he had claims against Mr. Reid and Mr. Stanley when he filed the FAC, because the FAC contains numerous allegations against Mr. Reid and Mr. Stanley, identifying them by their last names. *See* ECF No. 11 at 3 (naming "Officer Reid" four times); *id.* at 5 (naming "Officer Stanley" twelve times).

Turning to what Mr. Gladu "did," it is apparent that Mr. Gladu attempted to name Mr. Reid and Mr. Stanley as defendants in the FAC. While Federal Rule of Civil Procedure 10(a) generally requires the caption "include the names of all the parties," Fed. R. Civ P. 10(a), a case's "caption is not determinative as to the identity of the parties to the action," Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure* § 1321 (4th ed. 2024), *cited with approval in U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009). Especially in pro se cases, courts look to the body of a complaint to determine the intended defendants. *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243–44 (10th Cir. 2007) ("[W]hen the identity of the defendants is unclear from the caption,

---

[10] Defendants reference the often-cited precept that pro se litigants are not exempt from complying with procedural rules. *See F.D.I.C. v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994). However, in filing his motion to amend, Mr. Gladu complied with all relevant procedural rules. Indeed, Federal Rule of Civil Procedure 15(a) expressly provides that plaintiffs may seek leave to amend and requires the Court to give such leave freely. Fed. R. Civ. P. 15(a)(2). Nothing prevents the Court from considering Mr. Gladu's pro se status in determining what he "knew or should have known and what he did or should have done." *Lombardo*, 755 F.3d at 3–4 (quoting *Invest Almaz*, 243 F.3d at 72); *see also Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000) (considering "everything that [the court] can glean about [plaintiff's] knowledge at the time he filed his original complaint").

courts may look to the body of the complaint to determine who the intended and proper defendants are."); *Shariff v. United States*, 689 F. App'x 18, 20 (2d Cir. 2017) (holding list of names appended to bottom of complaint sufficiently identified defendants such that plaintiff was entitled to amend caption).

Here, the FAC's caption named "John Does 1–7." ECF No. 11. On the top of the second page, under the heading "Parties," the FAC stated that "Defendants John Does 1– 3 are media review officers (whose first names are unknown to [Mr. Gladu], *but their last names are believed to be Reid, Stanley*, and Unknown) and are/were responsible for reviewing publications sent to prisoners at MSP." ECF No. 11 at 2 (emphasis added). The FAC therefore identified Mr. Reid and Mr. Stanley's surnames, their place of employment, and their positions as Media Review Officers at MSP. These descriptions were sufficient to enable the Maine Attorney General to ascertain that Mr. Gladu intended to sue Mr. Reid and Mr. Stanley. *See Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (prisoner "described with sufficient clarity the head of the Jefferson County Jail as his additional defendant" who had been named John Doe in the caption); *cf. Eison v. McCoy*, 146 F.3d 468, 471 (7th Cir. 1998) (finding plaintiff did not adequately identify Chicago police officers by using *only* nicknames, such as "Pac Man" and "Crater Face," particularly in a police force "that employs in excess of 17,000 individuals"); *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (holding suit in which prisoner gave officers' last names and described their physical appearances was not frivolous). Indeed, the FAC was clear enough that the Maine Attorney General could eventually provide Mr. Reid and Mr. Stanley's first names to Mr. Gladu. *See* ECF No. 121 at 1 ("[C]ounsel for Defendants Liberty and Hancox provided Plaintiff with the first names they believe are accurate for Officers Reid and Stanley, who are referenced by last name in the Amended Complaint.").

The Named Defendants concede the FAC identifies Mr. Reid and Mr. Stanley. ECF No. 196 at 4 ("All [the New Defendants] are discussed in detail by name in the original complaint and amended complaint."). Still, the Named Defendants claim the FAC failed "to make clear [Mr. Gladu's] intent to *sue*" Mr. Reid and Mr. Stanley. *Id.* (emphasis added).

The Court disagrees. No reasonable person could read the FAC—which, it bears repeating, states that "Defendants John Does 1–3 are media review officers . . . [whose] last names are believed to be Reid, Stanley, and unknown"—and not conclude Mr. Gladu intended to sue Mr. Reid and Mr. Stanley.[11] When a complaint "names [defendants] in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else." *Barsten v. Dep't of Interior*, 896 F.2d 422, 423 (9th Cir. 1990) (quoting *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947)).

Moreover, Mr. Gladu made efforts over the course of this litigation to properly name Mr. Reid and Mr. Stanley as defendants, therefore indicating he intended to sue them. On May 10, 2024, Mr. Gladu moved for "assistance" in further identifying the John Doe Defendants, which the Named Defendants opposed as premature, arguing the names could be revealed through discovery. ECF Nos. 104, 107, 109. The Magistrate Judge granted the motion in part on June 5, 2024, ECF No. 118, and on June 10, 2024, counsel for Mr. Hancox and Mr. Liberty provided Mr. Gladu with the first names of Officers Reid

---

[11] Moreover, while Mr. Hancox and Mr. Liberty claimed they were unable to determine the identities of B-Shift John Does based on Mr. Gladu's description, ECF No. 121, they make no such claim regarding Mr. Reid and Mr. Stanley.

and Stanley.[12] *See* ECF No. 121. Around the same time, Mr. Gladu requested a status update from the Court regarding service on the John Doe Defendants, ECF No. 113, which the Court provided, ECF No. 130. All these efforts should have made clear to the Named Defendants that Mr. Gladu intended to sue Mr. Reid and Mr. Stanley.

In short, Mr. Gladu did what he was supposed to do in such circumstances: he sued two defendants under fictitious names, identified them to the extent possible, and once discovery began sought those defendants' full names so as to properly name them as defendants. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("[W]hen, as here, a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." (quoting *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980)).

The Named Defendants claim they will be prejudiced if Mr. Gladu is permitted to add Mr. Reid and Mr. Stanley as defendants. The Court recognizes allowing amendment at this point will extend this already-lengthy litigation, but such delay is not inherently prejudicial. Here, "no new legal theories are involved in the amendment," nor can the Named Defendants claim surprise given Mr. Gladu's stated intention, since the lawsuit's very inception, to name the New Defendants when able. *Carmona*, 215 F.3d 136. The Court "do[es] not believe that [Mr. Gladu's] conduct was so dilatory as to deprive [him] of the opportunity to make use of this long-sought-after identification" of Mr. Reid and Mr. Stanley. *Id.*; *see also Boliden Metech, Inc. v. United States*, 140 F.R.D. 254, 256–57 (D.R.I. 1991) (allowing amendment to include the United States as a defendant when

---

[12] Discovery was scheduled to close in October 2024, *after* the deadline to amend the pleadings. Therefore, had the Magistrate Judge not ordered the Named Defendants to provide Mr. Reid and Mr. Stanley's first names, such discovery could have been delayed until it was too late for Mr. Gladu to amend his FAC.

"[s]ervice of the original complaint was made on the same people, the United States Attorney and the Attorney General, who would have been served had the caption in the original complaint not mistakenly identified [a federal agency] as the defendant").

Therefore, considering what Mr. Gladu "knew or should have known and what he did or should have done," the Court finds Mr. Gladu did not unduly delay in formally naming Mr. Reid and Mr. Stanley as defendants. *Lombardo*, 755 F.3d at 3–4 (quoting *Invest Almaz*, 243 F.3d at 72).

### B. Futility

The Named Defendants argue Mr. Gladu's claims against Mr. Reid and Mr. Stanley are futile because the allegations "place responsibility on Defendants Hancox and Liberty and are insufficient to state a claim . . . against Officers Reid or Stanley." ECF No. 196 at 7. Because "the heart of [Mr. Gladu's] suit is a challenge to the alleged 'porn restriction'" imposed by Mr. Liberty and Mr. Hancox, the Named Defendants argue Mr. Gladu cannot ascribe any blame to Mr. Reid and Mr. Stanley. *Id.*

Liability under 42 U.S.C. § 1983 attaches when a defendant "subjects" another to the deprivation of a constitutional right—that is, "if he [or she] does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he [or she] is legally required to do, that causes the deprivation of which complaint is made." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560 (1st Cir. 1989) (quoting *Springer v. Seaman*, 821 F.2d 871, 879 (1st Cir.1987)).

The TAC alleges, and the Court therefore at this stage in the proceeding accepts as true, Mr. Reid was temporarily assigned as a Media Review Officer and in that position relied on his "personal predilections" to screen incoming materials. ECF No. 125-1 at 8. On February 24, 2022, Mr. Reid rejected delivery of four Playgirl magazines Mr. Gladu

had ordered. Mr. Reid provided pretextual reasons for the rejection, when in fact he was motivated by discriminatory bias. Mr. Gladu supports that claim by alleging Mr. Reid stated, "I didn't sign up for this job to look at magazines with dick all day." ECF No. 125-1 at 10. The TAC further alleges Mr. Reid told other inmates that publications depicting male nudity "disgusted" him. *Id.*

The TAC alleges Mr. Stanley was assigned as a Media Review Officer and rejected books Mr. Gladu ordered. Mr. Stanley told Mr. Gladu, "Look man, I don't know what you did to piss them off, but they defin[i]tely got it out for you right now," allegedly referring to Mr. Magnusson and others. ECF No. 125-1 at 11. Mr. Magnusson and Mr. Hancox instructed Mr. Stanley to tell Mr. Gladu the books had been rejected because they were sent by non-approved vendors—which Mr. Stanley did—while in fact Mr. Magnusson and Mr. Hancox had placed Mr. Gladu on a pornography restriction because they did not approve of materials depicting male nudity. ECF No. 125-1 at 11.

These allegations from the TAC plainly attribute responsibility for the alleged constitutional violations on both Mr. Reid and Mr. Stanley, as well as Mr. Hancox and Mr. Liberty. Even crediting the Named Defendants' argument that Mr. Reid and Mr. Stanley merely executed the challenged pornography restriction allegedly imposed by Mr. Hancox and Mr. Liberty, such conduct constitutes "participat[ing] in another's affirmative acts," and therefore opens Mr. Reid and Mr. Stanley to liability. *Gutierrez-Rodriguez*, 882 F.2d at 560. The Named Defendants cite no cases suggesting a plaintiff may sue only the most culpable defendants at "the heart" of a matter. *See* ECF No. 196 at 7.

The Named Defendants make no other argument for why the TAC fails to state a claim as to Mr. Reid and Mr. Stanley, so the Court need go no further on that front. *United*

24

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). The Court will grant leave to amend to add Mr. Reid and Mr. Stanley as defendants.

### III.    Addition of Mr. Theriault

Mr. Gladu objects to the Recommended Decision's denial of leave to add Mr. Theriault as a defendant as to Mr. Gladu's due process claim (Count III). The TAC alleges Mr. Theriault was the Grievance Review Officer ("GRO") at MSP and that he "failed to process" grievances Mr. Gladu submitted, thereby preventing Mr. Gladu from further appealing his grievances to the warden. ECF No. 125-1 at 16. Mr. Gladu acknowledges prisoners are "not entitled to meaningful prison grievance procedures" but claims a GRO's failure to comply with internal policy governing such procedures constitutes a due process violation. *Id.* To that end, Mr. Gladu argues Mr. Theriault's alleged failure to process the grievances denied Mr. Gladu of his right "to have his censored books reviewed by someone other than the censor." ECF No 194 at 2.

A prison official does not offend due process solely by failing to implement a prison grievance procedure. *Reichert v. Abbott*, No. 19-1876, 2020 WL 5588647, at *1 (1st Cir. June 8, 2020) (summary disposition). Notwithstanding of any grievance policy, however, a prisoner is constitutionally entitled to some safeguards concerning censorship decisions. The prisoner must be "notified of the rejection[,] . . . be given a reasonable opportunity to protest that decision, and . . . complaints [must] be referred to a prison official other than the person who originally disapproved the correspondence." *Lena v. DuBois*, 19 F.3d 1427, 1994 WL 99940, at *1 (1st Cir. 1994) (table decision) (quoting *Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974)).

25

Taking the TAC's allegations as true, Mr. Gladu was afforded all process due. He was notified when the books and magazines he ordered were rejected. He was given "a reasonable opportunity to protest that decision," which he availed himself of by filing a grievance challenging the rejection of his books and magazines. *Id.* Finally, those grievances were referred to Mr. Theriault, "a prison official other than the person who originally" rejected Mr. Gladu's books and magazines. *Id.*

While Mr. Theriault's alleged failure to process the grievances at that stage may have prevented Mr. Gladu from further appealing to the warden, Mr. Gladu is not entitled to multiple levels of internal appeal. *Cf. Starr v. Coulombe*, 368 F. App'x 156, 158 (1st Cir. 2010) (holding effective shortening of appeal window to challenge prison mail decisions from ten to five days such that prisoner could not appeal, though contrary to prison policy, was not unreasonable). Therefore, Mr. Theriault cannot be added as a defendant as to Count III.

## IV.    Operative Complaint

Finally, Mr. Gladu objects to the Recommended Decision insofar as it did not designate the TAC as the operative complaint. ECF No. 194 at 4–5. Mr. Gladu argues the TAC alleges facts that "read clearer and strengthen [his] existing claims." *Id.* at 5. The Named Defendants do not respond to this argument in their briefing.

The Court may grant a motion to amend for the purpose of clarifying a complaint. *Dempsey v. Nat'l Enquirer, Inc.*, 687 F. Supp. 692, 693 (D. Me. 1988) (granting motion to amend where plaintiff claimed amended complaint made "his allegations against the defendants clearer" and attempted to cure "any technical deficiencies"); *see also Aaron v. City of Lowell*, No. 20-CV-11604, 2022 WL 2953033, at *5 (D. Mass. July 26, 2022) (granting motion to amend due to "lack of formal objection" and "the benefits of working

with a clearer complaint"). Here, because the Court permits Mr. Gladu to revive Counts IV–VII based on his pleading new facts in the TAC which allegedly support those claims, the Court treats the TAC as the operative complaint.

## CONCLUSION

For the foregoing reasons, the Recommended Decision, ECF No. 193, is **ACCEPTED IN PART** and **REJECTED IN PART**. Mr. Gladu's motion for leave to file a Third Amended Complaint, ECF No. 125, is **GRANTED** to the following extent:

- The Third Amended Complaint is the operative complaint.

- Counts IV–VII are revived.

- Myles Reid and Andrew Stanley are added as defendants for all Counts.

Mr. Gladu's motion is **DENIED** to the extent he seeks to add Joseph Theriault as a defendant. Mr. Gladu's motion to substitute, ECF No. 134, is **DENIED** as moot.

**SO ORDERED.**

Dated this 10th day of March, 2025.

/s/ Stacey D. Neumann
**U.S. DISTRICT JUDGE**