UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| NICHOLAS A GLADU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   1:22-cv-00134-SDN |
| | ) |
| MATTHEW MAGNUSSON, et al. | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

Plaintiff Nicholas Gladu sued various employees and administrators at the Maine State Prison ("MSP"), where Mr. Gladu is incarcerated. He alleges they violated his rights by preventing him from obtaining magazines and books with images of male nudity. After I granted Mr. Gladu's motion for leave to file a Third Amended Complaint ("TAC") with new factual allegations and three newly named defendants, ECF No. 237, one of the new defendants, Andrew Stanley, moved to dismiss, ECF No. 251. For the following reasons, his motion is granted.

## FACTUAL BACKGROUND

I summarized the TAC's factual allegations in my order granting Mr. Gladu's motion for leave to file it. *See* ECF No. 237 at 2–8. Here, I repeat only the alleged facts relevant to Mr. Stanley's motion to dismiss. Applying the appropriate standard, I articulate the TAC's well-pled factual allegations as true and draw all reasonable inferences in Mr. Gladu's favor. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Because Mr. Gladu represents himself, I interpret his filings liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

1

Mr. Gladu is incarcerated at the MSP and openly identifies as "gay/queer." TAC ¶ 1.[1] According to Mr. Gladu, Maine Department of Corrections ("MDOC") policy permits prisoners at the MSP to possess printed materials depicting adult nudity, regardless of the gender depicted. According to Mr. Gladu, however, MSP officers prevented him from obtaining materials depicting male nudity out of personal animus toward gay people. For example, one Media Review Officer—responsible for screening books and magazines sent to prisoners—stated, "I didn't sign-up for this job to look at magazines with dick all day" and told other inmates that publications depicting male nudity "disgusted" him. *Id.* ¶¶ 51–52. On March 9, 2022, Mr. Gladu filed a formal complaint against the Media Review Officer with MSP Warden Matthew Magnusson for discrimination on the basis of sexual orientation and discriminatory application of MDOC policy. *Id.* ¶ 55.

On March 28, 2022, Mr. Gladu overheard Officer Andrew Stanley tell another prisoner that Mr. Stanley had been assigned as the new Media Review Officer, so Mr. Gladu spoke with him about MSP's rejection of Mr. Gladu's recent book orders. *Id.* ¶ 63. Mr. Stanley initially claimed he had rejected the books because they came from non-approved vendors and because he believed MDOC policy barred depictions of male nudity.

Mr. Stanley told Mr. Gladu, "Look man, I don't know what you did to piss them off, but they defin[i]tely got it out for you right now," in reference to Mr. Magnusson and other prison staff's feelings toward Mr. Gladu. *Id.* ¶ 65. Mr. Stanley further explained to Mr. Gladu that Mr. Magnusson and his assistant had instructed Mr. Stanley to tell Mr. Gladu the requested books "were rejected" for coming "from non-approved vendors," but in fact

---

[1] The Clerk's Office entered Mr. Gladu's proposed TAC, which the Court accepted, on the docket at ECF No. 238.

Mr. Magnusson and Mr. Hancox had placed Mr. Gladu on a "porn restriction" because they did not approve of materials depicting male nudity. *Id.* ¶ 66.

## PROCEDURAL HISTORY

Mr. Gladu filed his original complaint on May 9, 2022. ECF No. 1. He levied seven claims: Count I alleges Defendants violated Mr. Gladu's First Amendment rights by intentionally restricting Mr. Gladu's access to publications with adult male nudity, without any legitimate penological interest for doing so. Count II alleges Defendants denied Mr. Gladu equal protection on the basis of his sexual orientation in violation of the Fourteenth Amendment. Count III alleges Defendants denied Mr. Gladu due process of law in violation of the Fourteenth Amendment by seizing his property without notice or opportunity to be heard. Count IV alleges Defendants conspired to deprive Mr. Gladu of his rights by engaging in a concerted effort to fabricate rationales for withholding access to Mr. Gladu's materials. Count V alleges Defendants violated the Takings Clause of the Fifth Amendment by seizing his books and magazines without compensation. Count VI alleges Defendants violated the Maine Civil Rights Act by discriminating against him on the basis of sexual orientation. Count VII alleges Defendants retaliated against him for engaging in protected conduct.

Since Mr. Gladu filed his original complaint, this case has involved a whirlwind of amendments, motions, and objections, not to mention an interlocutory appeal. With each amendment, Mr. Gladu raised the same seven substantive claims, although he supported them with updated factual allegations. For the sake of resolving this motion to dismiss, what matters is this: Mr. Gladu's original complaint and First Amended Complaint did not name Mr. Stanley. Three other defendants moved to dismiss Counts I–V of the First Amended Complaint, contending claim preclusion barred those counts because Mr.

3

Gladu had already lost a prior case raising similar claims against other MSP officials. *See Gladu v. Waltz*, No. 18-CV-00275, 2020 WL 6385618 (D. Me. Oct. 30, 2020) [hereinafter *Gladu I*], *R&R adopted*, 2020 WL 7344706 (Dec. 14, 2020), *aff'd*, No. 21-1010, 2022 WL 20437774 (1st Cir. Oct. 24, 2022).

In this case, the Court rejected the claim preclusion argument in part, concluding that Mr. Gladu's First Amendment, equal protection, and due process claims (Counts I–III) were premised on sufficiently distinguishable facts such that the prior judgment did not bar Mr. Gladu from raising them. *See* ECF No. 96. The Court dismissed the remaining claims based on issue preclusion (as to Count V), failure to state a claim (as to Counts IV and VII), and lack of supplemental jurisdiction (as to Count VI). However, Mr. Gladu later sought to revive those claims by including new allegations in his TAC. *See* ECF No. 238. Because the Defendants did not oppose amendment as to those claims, the Court permitted Mr. Gladu to revive Counts IV–VII but noted that Defendants could address the merits of those claims at a later stage. The Court also permitted Mr. Gladu to add Mr. Stanley as a defendant for all claims in the TAC. Now, Mr. Stanley moves to dismiss those claims against him. ECF No. 251.

## DISCUSSION

Mr. Stanley moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive this motion, Mr. Gladu's complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This entails a two-step process. First, I "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz*, 669 F.3d at 55. Second, I "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable

4

inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id*. In doing so, my role is not to "attempt to forecast a plaintiff's likelihood of success on the merits," but to determine whether "the inference of liability . . . from the facts alleged" is reasonable. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

### I.   Failure to State a Claim

Mr. Stanley argues that, as a general matter, Mr. Gladu does not allege any "actual involvement" by Mr. Stanley in the conduct giving rise to any of Mr. Gladu's claims. In particular, Mr. Stanley argues that there "is no allegation that Officer Stanley rejected or seized any of the books." ECF No. 251 at 5. Mr. Stanley focuses on the fact that the TAC uses the passive voice in alleging that Mr. Stanley told Mr. Gladu the books had been rejected, without saying whether Mr. Stanley was the one who rejected them.

This reading of the TAC draws an inference against Mr. Gladu, which I am not permitted to do at this stage. *See Schatz*, 669 F.3d at 55. In context, taking the TAC's allegations as true and drawing reasonable inferences *in favor of* Mr. Gladu, as I must, the TAC plausibly alleges that Mr. Stanley himself rejected some books. On March 25, 2022, Mr. Gladu learned that a book delivered by mail four days earlier had been rejected. TAC ¶ 62. Three days later, on March 28, 2022, Mr. Gladu heard Mr. Stanley say that he had been appointed the new Media Review Officer. TAC ¶ 63. It is reasonable for me to infer from these allegations that Mr. Stanley was the Media Review Officer responsible for rejecting Mr. Gladu's book. Mr. Stanley's response when Mr. Gladu asked about his "recent book orders being censored" further supports that inference: Mr. Stanley told Mr. Gladu that "he thought that content with male nudity may not have been allowed under departmental policy, but either way the books had come from non-approved vendors." TAC ¶ 64. Then, Mr. Stanley admitted that Mr. Magnusson and Mr. Hancox had told Mr.

5

Stanley to tell Mr. Gladu a pretextual rationale for rejecting the books, when in fact they had placed Mr. Gladu on a "porn restriction." TAC ¶ 66. It is reasonable to infer from these statements that Mr. Stanley was describing his own thought process in rejecting the recent book orders.[2]

Mr. Stanley also argues that even if he did help "carry out the directive" of the so-called "porn restriction," the directive came from other employees, not Mr. Stanley. ECF No. 251 at 5. In his view, that protects him from liability. I previously rejected this argument, ECF No. 237 at 23–25, so I address it again only briefly. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he [or she] does an affirmative act, [or] participates in another's affirmative acts . . . ." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560 (1st Cir. 1989) (quoting *Springer v. Seaman*, 821 F.2d 871, 879 (1st Cir. 1987)). Therefore, even assuming Mr. Stanley merely executed a directive handed down by his fellow employees, such conduct constitutes "participat[ing] in another's affirmative acts." *Id*. Accordingly, I will not dismiss the claims against Mr. Stanley on this basis.

Mr. Stanley also raises specific arguments for dismissal on Count III (due process), Count IV (conspiracy), Count V (takings), and Count VII (retaliation). He argues the due process and takings claims fail because Mr. Gladu did not allege that any state law post-deprivation remedy was inadequate. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that an officer who seizes property does not offend due process "if a meaningful postdeprivation remedy for the loss is available"); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720–21 (1999) (holding same rule applies to Takings

---

[2] Even though it may *also* be reasonable to interpret these allegations in the manner Mr. Stanley suggests, I must interpret the facts in a manner favorable to Mr. Gladu at this stage. *Schatz*, 669 F.3d at 55.

Clause claims); *see Gladu I*, 2020 WL 6385618, at *6 (D. Me. Oct. 30, 2020) (concluding, in Mr. Gladu's earlier case, that prisoners' ability to appeal their grievances through state courts constitutes a meaningful post-deprivation remedy). Mr. Stanley argues the conspiracy claim fails because Mr. Gladu does not allege any class-based, discriminatory animus. And he argues the retaliation claim fails because Mr. Gladu does not allege that his filing of an internal grievance was a "substantial or motivating factor for the adverse action," *Staples v. Gerry*, 923 F.3d 7, 15 (1st Cir. 2019) (quotation modified), given that prison officials denied Mr. Gladu access to his books both before and after he filed a grievance.[3]

Mr. Gladu does not respond to these arguments at all in his opposition brief, so I need not address them further. "Judges are not expected to be mindreaders," so "a litigant has an obligation 'to spell out [their] arguments squarely and distinctly, or else forever hold [their] peace.'" *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)). When a plaintiff fails to respond to a defendant's reasoned argument on a motion to dismiss, the Court may treat any opposition as waived and grant the motion on those grounds. *See Wilson v. Dep't of Veterans Affs.*, No. 20-CV-00019, 2021 WL 1840753, at *3 (D. Me. May 7, 2021), *aff'd*, No. 21-1498, 2022 WL 2135269 (1st Cir. June 14, 2022), *cert. denied*, 143 S. Ct. 1054 (2023). "And while pro se litigants are held to a less stringent standard, they are not immune from these requirements." *Watson v. Trans Union LLC*, 223 F. App'x 5, 6 (1st Cir. 2007) (internal citations omitted); *see, e.g., Perez v. Medeiros*, No. 18-CV-10158,

---

[3] The Court previously granted other defendants' motions to dismiss based on these same arguments as to the conspiracy and retaliation claim. ECF Nos. 64, 96. I then permitted Mr. Gladu to revive the claims by amending his complaint. As explained further below, with the chance now to explain how his new allegations support those claims, Mr. Gladu declines to do so.

2020 WL 7130020, at *2 (D. Mass. Dec. 4, 2020) ("The court considers the unbriefed grounds waived."). Accordingly, because Mr. Gladu did not oppose the motion to dismiss Counts III, IV, V, and VII on these grounds, those claims are dismissed.

## II. Qualified Immunity

As for the remaining claims—Count I (First Amendment), Count II (equal protection), and Count VI (Maine Civil Rights Act)—Mr. Stanley argues qualified immunity shields him from liability. Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lopera v. Town of Coventry*, 640 F.3d 388, 396 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The First Circuit follows a two-step approach to such claims: The Court must "first ask whether the facts that a plaintiff has alleged make out a violation of a constitutional right. If so, [the Court] then ask[s] whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Haley v. City of Bos.*, 657 F.3d 39, 47 (1st Cir. 2011) (quotation modified). However, if "'it is plain that a constitutional right is not clearly established,' a court may grant the requested immunity" without addressing the first question. *Id.* (quoting *Pearson*, 555 U.S. at 237).

A prisoner's First Amendment right to obtain publications depicting nudity is not clearly established. To the contrary, a regulation restricting a prisoner's access to such materials may be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Indeed, numerous courts of appeals have held that prisons may ban sexually explicit material. *E.g.*, *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1155–56 (10th Cir. 2007); *Waterman v. Farmer*, 183 F.3d 208, 214–18 (3d Cir. 1999). This Court reached the very same conclusion in Mr. Gladu's prior case. *Gladu I,* 2020 WL 6385618,

8

at *5. Accordingly, because Mr. Gladu's asserted First Amendment right to possess his materials is not clearly established, Mr. Stanley is entitled to qualified immunity on Count I.

As for Count II, the allegations in the TAC do not make out an equal protection claim. "Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons situated similarly *in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression." *Calvary Chapel Belfast v. Univ. of Me. Sys.*, No. 24-CV-00392, 2025 WL 71701, at *5 (D. Me. Jan. 10, 2025) (quotation modified). "[D]istinguishing or mitigating circumstances . . . render the comparison inutile." *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007). Though Mr. Gladu alleges he is "the only prisoner" at MSP to be restricted from possessing materials depicting nudity, TAC ¶ 73, he has not alleged "specific instances" where other prisoners convicted of similar crimes were treated differently than Mr. Gladu, *Calvary Chapel*, 2025 WL 71701, at *5.

Insofar as Mr. Gladu's equal protection claim is of the "class of one" variety—that is, if he argues "the government singled him out for differential treatment for reasons unique to him, rather than because of his membership in any group," *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014)—then he must allege that there is "no rational basis for the difference in treatment." *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). As described above, there may be legitimate penological rationales that form a rational basis to restrict Mr. Gladu in particular—who is serving a sentence for various sex crimes involving a minor, including possession of sexually explicit materials, *Gladu I*, 2020 WL 6385618, at *2—from now possessing sexually explicit materials in prison. *See id.* at *5 (finding "the concerns of prison officials about the potential impact of the content

9

on the government's rehabilitation efforts" for Mr. Gladu justified a policy barring him from possessing materials depicting nudity); *Hopkins v. Grondolsky*, 759 F. Supp. 2d 97, 102 (D. Mass. 2010) (finding a prison sex-offender treatment program's rule barring particular inmates from possessing materials depicting nudity was reasonable). In light of those potential rationales, it was not objectively unreasonable for Mr. Stanley to restrict Mr. Gladu's access to sexually explicit materials. *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018) ("[O]nly those officials who should have known that their conduct was objectively unreasonable are beyond the shield of qualified immunity . . . ."). Accordingly, Mr. Stanley is entitled to qualified immunity on Count II.

Finally, I dismiss Count VI, Mr. Gladu's Maine Civil Rights Act claim, under the same qualified immunity standard. *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996) ("The Maine Civil Rights Act . . . employs the federal standard for qualified immunity.").

## CONCLUSION[4]

For the foregoing reasons, Mr. Stanley's motion is **GRANTED**. ECF No. 251. The claims against Mr. Stanley are **DISMISSED**.

**SO ORDERED.**

Dated this 26th day of August, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

---

[4] Because the foregoing analysis disposes of all Mr. Gladu's claims against Mr. Stanley, I do not address the parties' other arguments.