UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-cv-00134-SDN |
| | ) | |
| MATTHEW MAGNUSSON, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OMNIBUS ORDER

Plaintiff Nicholas Gladu sued various employees and administrators at the Maine State Prison ("MSP"), where Mr. Gladu is incarcerated. He alleges they violated his rights by preventing him from possessing magazines and books with images of male nudity. On September 12, 2025, Defendants Randall Liberty, James Hancox, Myles Reid, and Matthew Magnusson moved for judgment on the pleadings. ECF No. 281. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. Mr. Gladu also filed several other miscellaneous motions, each of which are **DENIED** for the reasons stated below. ECF Nos. 282, 295, 296, 297, 303.

## BACKGROUND

The Court has previously summarized the factual allegations in its order granting Mr. Gladu's motion for leave to file a Third Amended Complaint ("TAC"). *See* ECF No. 237 at 2–8; ECF No. 238 (TAC). The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)—under which Defendants bring their motion—"is the same as that for a motion to dismiss under Rule 12(b)(6)." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Unlike a Rule 12(b)(6) motion, a Rule

12(c) motion implicates the pleadings as a "whole." *Gulf Coast Bank & Tr. Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). During its review of the pleadings, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in his favor. *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quotation modified). Because Mr. Gladu is pro se, the Court construes his filings liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "The pleadings of a pro se plaintiff may be interpreted in light of his . . . supplemental submissions." *Flanders v. Mass Resistance*, No. 12-CV-00262, 2013 WL 2237848, at *9 (D. Me. May 21, 2013).

The relevant facts are as follows. Mr. Gladu openly identifies as "gay/queer." ECF No. 238 ¶ 1. He alleges Maine Department of Corrections ("MDOC") policy number 21.2 permits incarcerated individuals at the Maine State Prison ("MSP") to possess printed materials which depict adult nudity regardless of gender. *Id*. ¶ 3; *see* ECF No. 299-1 ("Policy 21.2"). Beginning in 2022, Mr. Gladu began facing difficulties receiving materials depicting male nudity; he alleges MSP officers prevented him from receiving new materials and confiscated his existing materials because of personal biases against gay people. *See* ECF No. 238 ¶¶ 5, 51–52, 87. Mr. Gladu further argues Defendants imposed a "porn-restriction" on him because he filed internal grievances about the alleged discrimination in March 2022 and filed a lawsuit against MSP officials in 2018. *Id*. ¶¶ 5, 103. He believes he is the only prisoner at MSP who is subject to such a restriction on pornographic materials. *Id*. ¶¶ 83–84. Defendants "contest most—if not all—of the substantive factual allegations" that Mr. Gladu presents in the TAC. ECF No. 281 at 1 n.1.

2

**LEGAL STANDARD**

Dismissal is only appropriate on a motion for judgment on the pleadings if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a "plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quotation modified). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. For the complaint to survive, it must state a claim that "raise[s] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a 12(c) motion, the Court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quotation modified). The Court may not resolve contested facts and may enter judgment "only if the properly considered facts conclusively establish the movant's point." *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). Assertions made in the complaint that have not been denied in the answer are taken as true. *See McCurdy v. Cumberland Cnty., Me.*, No. 23-CV-00223, 2024 WL 490837, at *1 (D. Me. Feb. 8, 2024). "Where material facts are disputed, the Court must deny the motion." *Child.'s Hosp. Corp. v. Cakir*, 183 F. Supp. 3d 242, 245 (D. Mass. 2016).

**ANALYSIS**

Mr. Gladu's TAC brings seven counts against all Defendants. First, he alleges unlawful censorship of publications in violation of the First Amendment (Count I). ECF

No. 238 at 17. Second, he asserts a denial of equal protection based on his sexual orientation (Count II). *Id.* Third, he asserts violations of due process when Defendants seized and confiscated his pornographic materials without notice or an opportunity to be heard (Count III). *Id.* at 18. Fourth, he asserts Defendants conspired together to deprive him of his constitutional rights (Count IV). *Id.* Fifth, he asserts a Takings Clause violation for confiscating the materials already in his possession (Count V). *Id.* at 19. Sixth, he brings a violation of the Maine Civil Rights Act, 5 M.R.S. § 4682, for the aforementioned violations (Count VI). *Id.* Seventh, he asserts Defendants impermissibly retaliated against him for engaging in protected conduct in the form of filing grievances and a lawsuit about his restricted status (Count VII). *Id.* The Court will address each count in turn.

## I.    Constitutional Claims

Each of Mr. Gladu's constitutional claims were brought pursuant to 42 U.S.C. § 1983. Defendants assert qualified immunity protects them, as government officials, from liability for civil actions taken under color of state law pursuant to section 1983. *See* ECF No. 281 at 9. The qualified immunity doctrine "provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Defendants assert they are immune from suit and therefore should be dismissed as defendants. Alternatively, Defendants assert Mr. Gladu fails to state a claim on each count. ECF No. 281 at 6, 16.

The relevant qualified immunity inquiry is a two-part test. First, the Plaintiff must show the facts alleged or shown make out a violation of a constitutional right. *Maldonado*, 568 F.3d at 269 (citing *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009)). Second, the right must be "clearly established" at the time of Defendants' alleged violation. *Id.*

4

The "clearly established" inquiry itself has two elements. *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014). "The first focuses on the clarity of the law at the time of the violation." *Id.* (quotation modified). "While [the Supreme] Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation modified). The Court must look "mainly to Supreme Court and First Circuit precedent, [but also] consider[] cases from other courts, and certain non-case-law sources, like statutes, prison regulations, and government studies and reports." *Cintron v. Bibeault*, 148 F.4th 37, 52 (1st Cir. 2025) (quotation modified). The second aspect "focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019) (quotation modified). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Cintron*, 148 F.4th at 52 (quotation modified). Ultimately, qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 580 U.S. at 79 (quotation modified).

### A.  First Amendment (Count I)

Mr. Gladu's First Amendment claim fails for the same reasons for which the Court previously granted qualified immunity to Defendant Mr. Stanley in its prior order. *See* ECF No. 277 at 8–10. A prisoner's First Amendment right to possess pornographic publications depicting nudity is not clearly established. Contrary to Mr. Gladu's assertions, prisons may have reasons "reasonably related to legitimate penological interests" to ban sexually explicit material. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see*

ECF No. 277 at 8 (collecting cases). Mr. Gladu's citations to *Thornburgh v. Abbott*, 490 U.S. 401 (1989), do not salvage his argument. *Thornburgh* reaffirmed the reasoning in *Turner*, finding that courts should give "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world," including by limiting sexually explicit material. *Id.* at 408. Defendants are entitled to qualified immunity on Count I.

### B. Equal Protection (Count II)

Mr. Gladu brings an as-applied equal protection claim, *see* ECF No. 294 at 8; ECF No. 238 at 17, arguing he is treated differently than other prisoners based on his sexual orientation. Specifically, he points to Policy 21.2, which governs prisoner mail and communication, to assert he is being denied access to materials with male nudity when he attempts to order sexually explicit materials from the publisher and MDOC staff refuse to deliver it to him. ECF No. 238 ¶¶ 88–92.

To assert an as-applied equal protection challenge, a plaintiff must show the government policy operates unconstitutionally as applied to his situation. *See Doe v. Austin*, 755 F. Supp. 3d 51, 66 (D. Me. 2024). The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, and requires that "all persons similarly situated be treated alike," *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 10 (1st Cir. 2013) (quotation modified). The Court must conduct a three-step inquiry to determine whether the MSP's policies around sexually explicit material violate Mr. Gladu's equal protection rights. First, the Court "identif[ies] whether the challenged classification is explicitly based upon sex or neutral on its face." *Austin*, 755 F. Supp. 2d at 66 (quoting *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d 215, 228 (D. Mass.

6

2021)). If the policy is "facially neutral," the Plaintiff must show "disparate impact and an intent to discriminate on the basis of sex." *Id.* at 67. Second, the Court "determine[s] the appropriate level of scrutiny' to apply to the challenged classification." *Id.* (quoting *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006)). Third, the Court evaluates whether Defendants' justifications for the classification survive that level of scrutiny. *Id.*

Procedure E of Policy 21.2, which governs receipt of certain publications in the mail, makes no mention of prohibitions based on the gender of the people partaking in the explicit material, nor does it prohibit certain inmates at the prison from possessing material based on their sexual orientation. *See* ECF No. 299-1 at 17–19. The contested policy is thus neutral on its face.

The second question is what level of scrutiny applies. The First Circuit does not explicitly recognize sexual orientation as a suspect class for equal protection purposes. *See, e.g.*, *Cook v. Gates*, 528 F.3d 42, 61 (1st Cir. 2008); *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 9–10 (1st Cir. 2012); *see also Galdos-Shapiro v. Town of Great Barrington*, No. CV 24-30070, 2025 WL 2959878, at *14 (D. Mass. Oct. 17, 2025) (recognizing the district court is bound by *Cook* and *Massachusetts*). As such, the Court will apply the lowest level of scrutiny: rational basis. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (A government classification that "neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Thus, the Court must "ascertain some relation between the classification and the purpose it served" to determine whether the government action is rationally related to a legitimate government interest. *Romer v. Evans*, 517 U.S. 620, 633 (1996).

In applying rational basis review at the motion to dismiss stage, the Court accepts as true the Plaintiff's allegations that he is similarly situated to other members of the class but must evaluate whether he has properly "negate[d] the purported justification" for the government policy at issue. *BoylstonD3 LLC v. Galvin*, 496 F. Supp. 3d 692, 698 (D. Mass. 2020); *see also Beach Commc'ns*, 508 U.S. at 315 (placing the burden on plaintiff to refute every possible legitimate basis for the subject legislation). Here, Mr. Gladu has not plausibly alleged that no rational basis exists. As this Court has previously stated, "there may be legitimate penological rationales that form a rational basis to restrict Mr. Gladu in particular—who is serving a sentence for various sex crimes involving a minor, including possession of sexually explicit materials—from now possessing sexually explicit materials in prison." ECF No. 277 at 9 (citing *Gladu v. Waltz*, No. 18-CV-00275, 2020 WL 6385618, at *2 (D. Me. Oct. 30, 2020), *report and recommendation adopted*, 2020 WL 7344706 (D. Me. Dec. 14, 2020), *aff'd*, No. 21-1010, 2022 WL 20437774 (1st Cir. Oct. 24, 2022)). Mr. Gladu has not advanced anything that would negate the fact that the prison has a rational desire to restrict materials for certain inmates. Similarly, Policy 21.2, which Mr. Gladu has put at issue here, provides guidelines for why a prison official may restrict certain sexually explicit materials. *See* ECF No. 299-1 at 17–19 (prohibiting materials that, inter alia, depict sexual acts with children or animals or which are sent to sex offenders). Even viewing the facts in the light most favorable to Mr. Gladu, he has not shown how this particular policy fails to advance the legitimate government interest articulated.

Accordingly, Mr. Gladu fails to state a cognizable equal protection claim, and it was not objectively unreasonable for Defendants to restrict Mr. Gladu's access to these materials. *See Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018) ("[O]nly those officials who should have known that their conduct was objectively unreasonable are

8

beyond the shield of qualified immunity . . . ."). Respondents are entitled to qualified immunity on Count II.

### C. Due Process Under the Fourteenth Amendment (Count III)

Mr. Gladu's third claim is that Defendants violated the Due Process Clause of the Fourteenth Amendment by depriving him of his property—the sexually explicit materials—without notice or the opportunity to be heard. ECF No. 238 at 18.

The Fourteenth Amendment says that state officials may not deprive persons of property without "due process of law." U.S. Const. amend. XIV. The amount of process due depends on the circumstances. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Critically, the due process analysis differs depending on whether the deprivation results from "random, unauthorized" conduct by state officials or from conduct "pursuant to established state procedure." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

Defendants argue confiscation of Mr. Gladu's materials constitutes random, unauthorized conduct—meaning he was deprived by allegedly intentional misconduct by individual officers rather than pursuant to a government policy. *See* ECF No. 281 at 11–12. Even construing Mr. Gladu's pro se briefings liberally, he does not contest the legality of policies that generally allow inmates to possess sexually explicit material; rather, he argues that individual Defendants acted improperly under their own discretion by denying him access to the materials, rendering each deprivation a discrete instance of intentional misconduct.[1] *See* ECF No. 238 ¶¶ 93–95. Because Mr. Gladu alleges the

---

[1] The inverse of this argument is that prison officials conducted the confiscations pursuant to the general prison policies prohibiting possession of certain material by people convicted of sex offenses and/or Policy 21.2 prohibiting receipt of certain sexually explicit material in the mail. Under that view, the deprivations would not have occurred "as a result of the unauthorized failure of agents of the State to follow established state procedure," but rather *because* of the existing procedures themselves. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Because Defendants

9

"action[s] w[ere] a deviation from, and not a reflection of, an established state procedure" allowing prisoners to possess sexually explicit materials, the claim "has no legal basis in a section 1983 case." *Watson v. Caton*, 984 F.2d 537, 541 (1st Cir. 1993).

Where the loss of property results from a "random, unauthorized act by a state employee"—rather than from an established state procedure—"the state cannot predict when the loss will occur." *Hudson*, 468 U.S. at 532. Hence, due process is satisfied so long as the state provides a meaningful post-deprivation remedy; no pre-deprivation hearing is required. *See id.* at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Here, Policy 21.2 permits a prisoner to use the internal grievance process to "grieve a decision related to mail" after it has been withheld from delivery. ECF No. 299-1 at 28. Mr. Gladu availed himself of exactly that process, pleading in the TAC that he submitted multiple grievances to Defendants on different dates in March 2022 as evidence of that process. ECF No. 238 ¶ 103. Moreover, Maine law also provides Mr. Gladu a tort-claim procedure to recover for any damages should he seek review of the prison's final decision. *See* M.R. Civ. P. 80C(a); *Anctil v. Cassese*, 2020 ME 59, ¶ 15, 232 A.3d 245, 251 (recognizing the prison grievance process as a "meaningful post-deprivation remedy" for the confiscation of paperwork by a prison official). Together, these available remedies satisfy the constitutional requirement of meaningful post-

---

appear to concede the challenged seizures were instances of intentional misconduct, *see* ECF No. 281 at 11–12, the Court does not reach the question of whether Defendants acted pursuant to an "established state procedure" and thus does not analyze the deprivations under that framework. *See, e.g., Godin v. Machiasport Sch. Dep't Bd. of Dirs.*, 831 F. Supp. 2d 380, 389 (D. Me. 2011) (evaluating due process challenge when defendants "followed an established state procedure").

deprivation process. *See Zinermon v. Burch*, 494 U.S. 113, 128–29 (1990); *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992).

Mr. Gladu thus fails to plead a violation of a constitutional right under the Fourteenth Amendment's Due Process Clause, and Defendants are entitled to qualified immunity on Count III.

### D. Fifth Amendment Takings Clause (Count V)

Mr. Gladu's fifth cause of action asserts Defendants violated the Takings Clause of the Fifth Amendment when they confiscated seven books and magazines he had in his possession which contained adult male nudity. ECF No. 238 at 19.

The Takings Clause prohibits the taking of private property by the government without just compensation. U.S. Const. amend. V. A takings claim must be based on the government's rightful exercise of its property, contract, or regulatory powers, and therefore does not arise when rights or property have been impaired through "unlawful government action." *Golder v. United States*, 15 Cl. Ct. 513, 518 (1988). Because Mr. Gladu here asserts that the seizure of the materials was unlawful, rather than pursuant to a government policy or law, his Takings Clause claim is misplaced. *See Watrous v. Salisbury*, No. C.A. 09-599, 2010 WL 2035364, at *6 (D.R.I. Apr. 27, 2010), *report and recommendation adopted*, 2010 WL 2025174 (D.R.I. May 20, 2010) (dismissing Takings Clause claim where plaintiff asserted prison officials illegally took his personal property). Plaintiff's claim is not clearly established, and Defendants are entitled to qualified immunity as to Count V.

### E. First Amendment Retaliation (Count VII)

Mr. Gladu alleges Defendants retaliated against him in violation of the First Amendment when they placed him on a "porn restriction"—understood here to mean a

blanket prohibition on receiving or possessing sexually explicit materials—following grievances of sexual orientation discrimination and the filing of his prior lawsuit concerning possession of sexual materials.[2] ECF No. 238 at 19; *see Gladu v. Waltz*, 2020 WL 6385618, at *1.

To establish a First Amendment retaliation claim against prison officials, a plaintiff must plead sufficient facts to show that "he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). Defendants do not dispute that Mr. Gladu engaged in protected activity by filing grievances and legal actions and that the "porn restriction" constitutes adverse action in this instance. *See* ECF No. 281 at 14. Defendants' primary contention is that the causal connection is lacking—specifically that Defendants imposed the restriction before Mr. Gladu filed his grievances. *See id*.

The TAC recounts the following timeline: On or about January 6, 2022, Mr. Gladu received a *Playgirl* magazine in the mail, which Defendants allegedly destroyed but for which the prison reimbursed him the cost. ECF No. 238 ¶¶ 40–45. On February 24, the prison received four more *Playgirl* magazines in the mail and rejected them. *Id*. ¶ 46. On March 4, Mr. Gladu attempted to speak to Defendant Officer Reid about the decision to reject the four magazines. *Id*. ¶ 53. On March 9, Mr. Gladu filed a formal complaint with Defendant Warden Magnusson about the rejection of the four magazines. *Id*. ¶ 55. On March 16, Mr. Gladu's brother ordered eight books depicting male nudity from Amazon, which the prison received and rejected. *Id*. ¶¶ 56–57. On March 18, Mr. Gladu received a disposition form stating the books had been rejected, but which did not explain the

---

[2] Mr. Gladu filed the prior lawsuit on July 11, 2018. *See* Dkt. No. 18-cv-00275, ECF No. 1 (D. Me. 2018).

rationale for the rejections. *Id.* ¶ 59. On March 22, the prison rejected another book with male nudity, *id.* ¶ 61, and on March 25, Mr. Gladu received another disposition form explaining the rejection, *id.* ¶ 62. Starting on March 31, Mr. Gladu made several requests to Defendants for official information about the "porn restriction," but received no response. *Id.* ¶ 69. In April 2022, Mr. Gladu's unit manager claimed to have received an email from Defendants Warden Magnusson and Officer Hancox advising that the restriction "had been in effect since the final judgment in Gladu's prior lawsuit"[3] and that Defendants understood the "prior lawsuit had resulted in a complete prohibition of Gladu from ever again possessing any sort of sexually explicit materials even if those materials would otherwise be allowable under MDOC policy."[4] *Id.* ¶ 70. In June 2022, Defendants further restricted Mr. Gladu's materials, confiscating several books of erotic fiction that contained no nude imagery. *Id.* ¶¶ 77–78.

Construing all facts in Mr. Gladu's favor, as the Court must at this stage, *see Vergara-Nuñez*, 446 F.3d at 182, the timeline Mr. Gladu puts forth supports a plausible causal connection. Mr. Gladu commenced his first lawsuit in 2018, and judgment was entered on December 15, 2020—the date Warden Magnusson and Officer Hancox allegedly cited in their email as the trigger for the restriction. Both events predate the first mail rejections Mr. Gladu experienced in early 2022. Mr. Gladu filed his first official complaint with the Warden on March 9, 2022, evidently upon first realizing that his mail was being purposely restricted rather than incidentally rejected for failure to comply with

---

[3] The Clerk of Court entered judgment in the original district court case on December 15, 2020. *See* Dkt. No. 18-cv-00275, ECF No. 298. The First Circuit affirmed the judgment on October 24, 2022. *See* Dkt. No. 18-cv-00275, ECF No. 312.

[4] Because the parties do not raise the issue, the Court does not address here whether Defendants' legal interpretation of the previous lawsuit's judgment was objectively reasonable under the qualified immunity analysis.

other mail policies. Defendants then subjected him to additional mail rejections and property confiscations in the months that followed.

The Court finds the TAC adequately pleads a causal and temporal connection between Mr. Gladu's protected activity—the filing of the first lawsuit and the complaints made in March 2022—and the subsequent confiscations of property. Construing the facts in Mr. Gladu's favor, the TAC plausibly alleges that his protected activity "was a substantial or motivating factor for the adverse [action]." *Padilla-García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir. 2000). Thus, Mr. Gladu has properly asserted the violation of a constitutional right. The Court proceeds to the second prong of the qualified immunity analysis: whether the right was clearly established at the time of the retaliatory action. *See City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam).

A government official's conduct violates clearly established law when the "contours of the right [are] sufficiently clear" such that every "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The test focuses on the "objective reasonableness" of the official's conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). MSP officials knew, or reasonably should have known, that retaliation predicated on filing a prison grievance is prohibited. Defendants' own briefing acknowledges as much. *See* ECF No. 281 at 14 ("While the filing of a prison grievance can be considered protected activity for purposes of the First Amendment . . . .") (citing *Hannon*, 645 F.3d at 48)); *Hannon*, 645 F.3d at 48 ("The [incarcerated] plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity."). It is equally clear that an inmate's pursuit of litigation related to his treatment in prison is protected activity. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996) ("It is now

14

established beyond doubt that prisoners have a constitutional right of access to the courts."); U.S. Const. amend. I (establishing the First Amendment right "to petition the Government for a redress of grievances").

Based on the record currently before the Court, Defendants are not entitled to qualified immunity on Mr. Gladu's First Amendment retaliation claim.[5] The portion of Defendants' motion to dismiss Count VII is **DENIED**.

## II.   Other Claims

### A.  Conspiracy (Count IV)

Mr. Gladu asserts Defendants conspired to violate his constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985(3). ECF No. 238 at 18. To plead a conspiracy under section 1985, a plaintiff must allege facts supporting (1) a conspiracy; (2) a conspiratorial purpose to deprive a class of persons of equal protection of the laws; (3) an overt act in furtherance thereof; and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *Stand With US Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 24 (1st Cir. 2025). Because Mr. Gladu fails to present a viable equal protection claim, *see supra* Subsection I.B, his conspiracy claim fails as well, *see Iqbal*, 556 U.S. at 678 (holding threadbare recitals of the elements supported by conclusory statements are insufficient to sustain a claim for relief). Defendants' motion to dismiss as to Count IV is **GRANTED**.

---

[5] Moreover, Defendants state in their response that they contest most, if not all, of Mr. Gladu's factual assertions. ECF No. 281 at 1 n.1. Where material facts are disputed, the Court must deny the motion for judgment on the pleadings. *See Cakir*, 183 F. Supp. 3d at 245. Accordingly, whether Defendants' conduct was predicated on Mr. Gladu's protected activity is a disputed material fact which precludes judgment for Defendants at this stage.

**B. Violation of the Maine Civil Rights Act (Count VI)**

Mr. Gladu asserts a violation of the Maine Civil Rights Act ("MCRA"), 5 M.R.S. § 4682, predicated on the aforementioned violations of his constitutional rights, *see* ECF No. 238 at 19. The disposition of a section 1983 claim "also controls a claim under the MCRA." *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007). Because Mr. Gladu fails to establish constitutional violations on Counts I through V, Defendants are entitled to dismissal on those corresponding MCRA claims as well. The Court nonetheless exercises supplemental jurisdiction over the remaining MCRA retaliation claim, as Mr. Gladu has stated a cognizable First Amendment retaliation claim. *See Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 83 (D. Me. 2013) (maintaining supplemental jurisdiction over an MCRA retaliation claim when the plaintiff established a viable First Amendment retaliation claim). Defendants' motion to dismiss as to Count VI is **GRANTED IN PART** and **DENIED IN PART**.

### III.   Miscellaneous Other Motions

Mr. Gladu has filed several other motions unrelated to Defendants' motion for judgment on the pleadings, which the Court addresses in turn.

**A. Motion to Reconsider Magistrate Judge's Order on Pending Motions**

Mr. Gladu objects, ECF No. 282, to the Magistrate Judge's September 12, 2025, order denying several of his discovery motions, ECF No. 280. Mr. Gladu specifically challenges the Magistrate Judge's decision to prohibit Mr. Gladu from taking written depositions of several witnesses and to deny a protective order for nonparty witnesses. ECF No. 282 at 3.

Federal Rule of Civil Procedure 72(a) provides that "[t]he district judge in the case must consider timely objections [to a Magistrate Judge's order] and modify or set aside

16

any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The Court finds no clear error or legal defect in the Magistrate Judge's order. As the Magistrate Judge correctly noted, written depositions "are generally disfavored, and rarely, if ever, used in modern litigation under any circumstances," ECF No. 280 at 2 (quoting *Foley v. Baker*, No. 21-CV-10615, 2022 WL 3088049, at \*2 (D. Mass. Aug. 3, 2022)); *see* ECF No. 280 at 2, and Mr. Gladu remains free to pursue written interrogatories as an alternative means of obtaining information from witnesses. As to the requested protective orders, Mr. Gladu has offered no evidence that MSP staff would intimidate or retaliate against nonparty witnesses for participating in this lawsuit, and therefore has not demonstrated the "good cause" required to justify such relief. *See id*. at 4. Nor has Mr. Gladu established that he is unable to produce the documents Defendants have requested, providing no basis for the additional protective order he seeks on that ground.

Accordingly, Mr. Gladu's motion to reconsider, ECF No. 282, is **DENIED**, and the Magistrate Judge's order, ECF No. 280, is **AFFIRMED**.

### B. Motion for District Court to Take Judicial Notice of Its Own Docket and MDOC Policy

Mr. Gladu moves this Court take judicial notice of the earlier lawsuit discussed above, *Gladu v. Waltz*, 2020 WL 6385618, and MDOC's Policy 21.2. ECF No. 295. The Court has already determined which portions of the *Waltz* lawsuit are relevant, specifically the date on which judgment was entered. *See supra* Subsection I.E. The Court declines to take notice of the facts alleged in that lawsuit, as the instant suit concerns separate claims and factual circumstances. The Court properly relies only on the parties' pleadings and the facts alleged in the TAC in order to reach its conclusion in this case. The

Court has reviewed MDOC policies only to the extent they bear on Plaintiff's claims. Accordingly, this motion and the related requests for an extension of time to file accompanying exhibits are **DENIED**. ECF Nos. 295, 296, 297; *see* ECF No. 298 (filing of attachments).

### C. Motion for Evidentiary Hearing

Mr. Gladu moves the court for an evidentiary hearing to evaluate the veracity of his claims that he lacks access to the prison law library. ECF No. 303. Defendants oppose the motion, asserting Mr. Gladu has adequate access to the law library and legal research tools but refuses to comply with the conditions governing that access. ECF No. 304.

Under *Bounds v. Smith*, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries." 430 U.S. at 828. However, *Bounds* "did not create an abstract, freestanding right to a law library." *Casey*, 518 U.S. at 351. Instead, "'meaningful access to the courts is the touchstone'" of the inquiry, and the inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (quoting *Bounds*, 430 U.S. at 823).

Mr. Gladu fails to make that showing. His numerous filings in this case—and his success here on maintaining two claims—demonstrate that he has not been hindered in presenting his legal arguments. Even assuming as true the disputed facts about his use of a legal research tablet or law librarian access, the record demonstrates he has not been hindered in his efforts to pursue a legal claim.

Accordingly, Mr. Gladu's motion for an evidentiary hearing is **DENIED**. ECF No. 303.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. ECF No. 281. Defendants are entitled to qualified immunity on the First Amendment claim (Count I), the Equal Protection claim (Count II), the Due Process claim (Count III), and the Takings Clause claim (Count V), and these counts are each **DISMISED**. Plaintiff fails to state a viable claim on the conspiracy claim (Count IV), which is **DISMISSED**. Defendants' motion to dismiss the First Amendment retaliation claim (Count VII) is **DENIED**. The Court retains supplemental jurisdiction over the MCRA retaliation claim (Count VI).

Plaintiff's motion to reconsider the Magistrate Judge's discovery order is **DENIED**, ECF No. 282, and the Magistrate Judge's order is **AFFIRMED**, ECF No. 280. Plaintiff's motions for judicial notice are **DENIED**. ECF Nos. 295, 296, 297. Plaintiff's motion for an evidentiary hearing is **DENIED**. ECF No. 303.

**SO ORDERED.**

Dated this 15th day of April, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**